UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CARRÉ SUTTON,

        Plaintiff,

        v.

GÉRALD MARIE, AKA GÉRALD MARIE
CASTELLAC, an individual, and
TRUDI TAPSCOTT, an individual

        Defendants.

Case No.  1:21-cv-06787 (MKV)

---

## MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS

---

**PASHMAN STEIN WALDER HAYDEN, P.C.**
2900 Westchester Avenue, Suite 204
Purchase, New York 10577
(914) 612-4092
*Attorneys for the Defendant,*
*Trudi Tapscott*

On the Brief:

Joseph A. D'Avanzo, Esq.

i

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL BACKGROUND.................................................................................... 3

ARGUMENT ......................................................................................................... 7

   POINT I .............................................................................................................. 7

     THE STANDARD TO BE APPLIED BY THE COURT ..................................... 7

   POINT II ............................................................................................................. 8

     PLAINTIFF'S CLAIMS ARE TIME BARRED ................................................. 8

       A.   New York's CVA Does Not Apply To Plaintiff's Claims ..................................... 9

       B.   Plaintiff's Claims Are Time Barred Under New York Law .................................. 11

       C.   Plaintiff's Claims Are Time Barred Under New York's Borrowing Statute.......... 12

   POINT III ........................................................................................................... 14

     PLAINTIFF FAILS TO STATE A FRAUD CLAIM AGAINST TAPSCOTT.................. 14

   POINT IV ........................................................................................................... 19

     THE NEGLIGENCE CLAIM AGAINST TAPSCOTT SHOULD BE DISMISSED ......... 19

   POINT V ............................................................................................................ 22

     THE CLAIM FOR INTENTIONAL INFLICTION OF ....................................... 22

     EMOTIONAL DISTRESS SHOULD BE DISMISSED ..................................... 22

CONCLUSION.................................................................................................... 25

# TABLE OF AUTHORITIES

Page(s)

## Cases:

*Ajinomoto Co. v. CJ CheilJedang Corp.*,
   No. 1:16-CV-03498 (MKV), 2021 WL 4430200 (S.D.N.Y. Sept. 27, 2021) ......................... 19

*Allen v. Handszer*,
   148 Misc.2d 334, 560 N.Y.S.2d 593 (N.Y.Sup.Ct.1990) ......................................................... 11

*Antone v. Gen. Motors Corp., Buick Motor Div.*,
   64 N.Y.2d 20 (1984) ......................................................................................................... 12, 13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................................... 8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................................... 8

*Bellere v. Gerics*,
   304 A.D.2d 687, 759 N.Y.S.2d 105 (2d Dept. 2003) ............................................................... 17

*Brooklyn Ctr. for Psychotherapy, Inc. v. Philadelphia Indem. Ins. Co.*,
   955 F.3d 305 (2d Cir. 2020) ....................................................................................................... 8

*Caputo v. Pfizer, Inc.*,
   267 F.3d 181 (2d Cir. 2001) ............................................................................................... 15, 19

*Chanko v. American Broadcasting Companies, Inc.*,
   27 N.Y.3d 46, 29 N.Y.S.3d 879, 49 N.E.3d 1171 (2016) .................................................. 23, 24

*D'Amico v. Christie*,
   71 N.Y.2d 76, 524 N.Y.S.2d 1, 518 N.E.2d 896 (1987) .......................................................... 21

*Deutsche Bank Nat'l Trust Co. v. Barclays Bank PLC*,
   34 N.Y.3d 327 (2019) ............................................................................................................... 13

*Eiseman v. State*,
   70 N.Y.2d, 518 N.Y.S.2d 608, 511 N.E.2d 1128 (1987) ......................................................... 21

*Ellul v. Congregation of Christian Brothers.*,
  774 F.3d 791 (2d Cir. 2014)..................................................................... 8

*Engelhart v. County of Orange*,
  16 A.D.3d 369, 790 N.Y.S.2d 704 (2d Dept. 2005) ........................................ 20, 21

*Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*,
  375 F.3d 168 (2d Cir. 2004)................................................................... 16, 19

*Ghartey v. St. John's Queens Hosp.*,
  869 F.2d 160 (2d Cir. 1989)...................................................................... 9

*Giuffre v. Dershowitz*,
  2020 WL 2123214 ................................................................................ 10

*Global Fin. Corp. v Triarc Corp.*,
  93 N.Y.2d 525 (1999) .......................................................................... 13, 14

*Hamilton v. Beretta U.S.A. Corp.*,
  96 N.Y.2d 222, 727 N.Y.S.2d 7, 750 N.E.2d 1055 (2001)........................... 20, 21, 22

*Holloway v. Holy See*,
  2021 WL 1791456 ................................................................................ 10

*Homeward Residential, Inc. v. Sand Canyon Corp.*,
  499 F. Supp. 3d 18 (S.D.N.Y. 2020)........................................................... 13

*Honickman v. BLOM Bank SAL*,
  6 F.4th 487 (2d Cir. 2021) ...................................................................... 8

*Howell v. New York Post Co.*,
  81 N.Y.2d 115, 596 N.Y.S.2d 350, 612 N.E.2d 699 (1993)................................. 24

*In re Livent, Inc. Noteholders Sec. Litig.*,
  151 F. Supp. 2d 371 (S.D.N.Y. 2001).................................................... 19, 20

*In re Mid-Island Hosp., Inc.*,
  276 F.3d 123 (2d Cir. 2002).................................................................... 18

*Ins. Co. of N. Am. v. ABB Power Generation*,
  91 N.Y.2d 180 (1997) .......................................................................... 13

*Jackson v. New York University Downtown Hosp.*,
  69 A.D.3d 801, 893 N.Y.S.2d 235 (2d Dept. 2010) .................................... 17

*Kenneth R. v. Roman Catholic Diocese of Brooklyn*,
  229 A.D.2d 159, 654 N.Y.S.2d 791 (2d Dept. 1997) ................................................ 17

*Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter,
  Inc.*, 32 F.2d 195 (2d Cir. 1929) .................................................................... 4, 5

*Lauer v. City of New York*,
  95 N.Y.2d 95, 711 N.Y.S.2d 112, 733 N.E.2d 184 (2000).......................... 21, 22, 23

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*,
  797 F.3d 160 (2d Cir. 2015)................................................................................ 15

*Marilyn S. v. Independent Group Home Living Program, Inc.*,
  73 A.D.3d 892, 903 N.Y.S.2d 403 (2d Dept. 2010) ............................................ 17

*Martin v. Julius Dierck Equipment Co.*,
  43 N.Y.2d 583 (1978) ...................................................................................... 14

*Matrixx Initiatives, Inc. v. Siracusano*,
  563 U.S. 27 (2011) ............................................................................................. 8

*Mojica v. Gannett Company, Inc.*,
  71 A.D.3d 963, 897 N.Y.S.2d 212 (2d Dept. 2010) ...................................... 20, 21

*Murphy v. American Home Prods. Corp.*,
  58 N.Y.2d 293, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983)................................ 24, 25

*Ontario, Inc. v. Samsung C & T Corp.*,
  31 N.Y.3d 372 (2018) .................................................................................. 12, 17

*Palka v. Servicemaster Mgt Servs. Corp.*,
  83 N.Y.2d 579, 611 N.Y.S.2d 817, 634 N.E.2d 189 (1994).................................. 20

*People v. Sturm, Ruger & Co.*,
  309 A.D.2d 91, 761 N.Y.S.2d 192 (1st Dept. 2003)............................................. 22

*Purdy v. Public Adm'r. of County of Westchester*,
  72 N.Y.2d 1, 530 N.Y.S.2d 513, 526 N.E.2d 4 (1988).......................................... 20

*Raske v. Next Management, LLC*,
  40 Misc. 3d 1240(A) (Sup. Ct., NY County 2013)................................................ 18

*Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*,
    68 F.3d 1478 (2d Cir. 1995)................................................................................. 18

*Roeder v. J.P. Morgan Chase & Co.*,
    523 F. Supp. 3d 601 (S.D.N.Y. 2021), *appeal filed* ..................................... 9

*S.H. v. Diocese of Brooklyn*,
    2020 WL 4730433 ...................................................................................... 10

*Scheuer v. Rhodes*,
    416 U.S. 232 (1974)....................................................................................... 8

*Schiffer v. Sunrise Removal, Inc.*,
    62 A.D.3d 776, 879 N.Y.S.2d 518 (2d Dept. 2009) ................................... 17

*Solomon by Solomon v. City of New* York,
    499 N.Y.S.2d 392, 66 N.Y.2d 1026, 489 N.E.2d 1294 (1985)................................ 20

*Strauss v. Belle Realty Co.*,
    65 N.Y.2d 399, 492 N.Y.S.2d 555, 482 N.E.2d 34 (1985)........................ 20, 21

*United States v. McKeon*,
    738 F.2d 26 (2d Cir. 1984)........................................................................ 4, 6

*Walker v. Schult*,
    717 F.3d 119 (2d Cir. 2013)........................................................................ 8

**Statutes:**

NY Penal Law § 130.05 (3) (a)....................................................... 6, 17, 25

NY Penal Law §§ 130.20 (1) & 130.25 (3) ........................................... 6, 25

**Rules:**

CPLR § 202.......................................................................................... 3, 12, 13

CPLR § 214, subsection 5 ............................................................................ 11

CPLR § 214-g ............................................................................................. 9, 10

CPLR § 215, subsection 3 ............................................................................ 12

Fed. R. Civ. P. 9 (b) ..................................................................................... 15

FRCP Rule 8(d)................................................................................................................ 19

FRCP Rules 12 (b) ........................................................................................................... 1

Rule 12(b)(6), Fed. R. Civ. P ...................................................................... 7, 8, 14, 26

**<u>Foreign Law</u>**:

Article 640 – Code of Civil Procedure of France ........................................................13

Article 2226 – Civil Code of France ............................................................................14

The Defendant, Trudi Tapscott, submits this memorandum of law in support of her motion to dismiss this action pursuant to FRCP Rule 12 (b) 6 on the ground that Plaintiff has failed to state a claim upon which relief can be granted.

## PRELIMINARY STATEMENT

In 1986, Plaintiff, Carré Sutton a/k/a Carré Otis, then a 17-year-old fashion model from California represented by modeling agency Elite Model Management, was allegedly sent from Elite's New York to Elite's Paris office and then raped by Defendant, Gérald Marie, in Paris, France as part of an alleged conspiracy between Elite's Chairman of the Board and Chief Executive Officer, John Casablancas, and the head of Elite Paris, Marie, to traffic in and sexually abuse young female models represented by Elite.

Plaintiff claims that Ms. Tapscott, an employee of Elite, participated with Marie to defraud Plaintiff into going to Paris, living with Marie and being raped.  Plaintiff alleges no facts that support her conclusion that Ms. Tapscott knew of Marie's "true intent" to repeatedly sexually abuse Plaintiff in Marie's apartment in Paris.  At most, Ms. Tapscott is allegedly "guilty" of communicating to Plaintiff the decision by Casablancas and/or Marie to send Plaintiff to Elite's Paris office.

Plaintiff claims that Ms. Tapscott owed Plaintiff a duty of care because Ms. Tapscott was Plaintiff's "employer, caretaker, housemother and housing provider"; however, none of the Plaintiff's allegations support these conclusions.  Elite was Plaintiff's manager, not her employer.  Neither Elite nor Ms. Tapscott were Plaintiff's guardian.  Elite provided an apartment for Plaintiff and other new models while living in New York.  Ms. Tapscott had oversight over this apartment in New York.  The allegations of rape and sexual abuse occurred in Paris, not in New York.  As

such, there is no connection between the horrific events described in the Complaint and Ms. Tapscott's role as an employee of Elite New York.

Finally, Plaintiff claims that Ms. Tapscott "knew or should have known" Defendant Marie was a sex offender.  The allegations that are supposed to support this conclusion are after-the-fact events, which not only undermine the allegations of fraudulent intent, but actually contradict the claim that Ms. Tapscott and others knew that Plaintiff was living with Defendant Marie and was raped while doing so.

The Plaintiff resides in Colorado. The Elite described in the Complaint is defunct.  John Casablancas is dead.[1]  The other executives of Elite are either dead or scattered to jurisdictions outside New York.  Defendant Marie, the alleged rapist and sexual abuser, is somewhere in Europe.  Apparently, the only individual from Plaintiff's distant past-relationship with Elite that could be found in New York was Ms. Tapscott.

What is abundantly clear when the allegations of the Complaint are viewed with care is that Ms. Tapscott was named as a defendant in this action solely for purposes of bringing this action in New York in the hope of applying New York's Child Victims Act so as to revive otherwise time barred claims.  In order to do so, Plaintiff attempts to reframe the narrative to make it appear as though Plaintiff's nightmarish experience began and/or took place in New York.  The inescapable fact, however, is that the alleged rape and sexual abuse occurred in France, rendering the Child Victims Act inapplicable to this case and the claims against Ms. Tapscott time barred.  Even if Plaintiff's claims were revived by the Child Victim Act, New York's "borrowing statute",

---

[1] *See*, Wilson, Eric, "John Casablancas, Modeling Visionary, Dies at 70", (NY Times 07/20/2013), https://www.nytimes.com/2013/07/21/nyregion/john-casablancas-modeling-visionary-dies-at-70.html

CPLR § 202, time bars the Plaintiff's claims as she was a California resident at the time of the alleged events, a Colorado resident at the time of commencement of this action, and her claims accrued in France, whose statute of limitations expired prior to the commencement of this action.

## **FACTUAL BACKGROUND**

On August 12, 2021, Plaintiff, Carré Sutton, filed her Complaint [ECF No. 1] (hereinafter "Complaint" or "Complt.") against Defendants, Gérald Marie a/k/a Gérald Marie Castelbajac (hereinafter "Marie") and Trudi Tapscott.  In response to Ms. Tapscott's request for leave to file a motion to dismiss the Complaint (Letters of Counsel [ECF Nos. 16 – 17]), the Court issued an Order with deadlines for the filing of any amendment to the Complaint and the filing of any motion to dismiss (Scheduling Order dated 11/30/2021 [ECF No. 21]).  On January 11, 2022, Plaintiff filed her First Amended Complaint [ECF No. 23][2] (hereinafter referred to as the "Complaint" or "FAC").

This action is purportedly being brought under the New York Child Victim's Act (also referred to herein as the "CVA") for alleged sexual abuse of the Plaintiff by Marie while Plaintiff was a minor (FAC, ¶ 1).  Plaintiff alleges four claims for relief: (1) fraud against Marie and Tapscott (*id*., ¶¶ 67-74); (2) negligence against Tapscott (¶¶ 75-79); (3) intentional infliction of emotional distress against Marie and Tapscott (¶¶ 80-84); and (4) conspiracy to commit sexual misconduct against Marie (*id*., ¶¶85-89).

In January 1986, when Plaintiff was 16 or 17 years old, she was discovered by a modeling agent with connections to Elite Model Management in New York and flown to New York where

---

[2] Due to a filing error, the First Amended Complaint was refiled under ECF Docket No. 24 on January 12, 2022.

Elite's founder, John Casablancas, took an interest in her, put her up in a models' apartment that she shared with five other models and paid her a small stipend (FAC, ¶¶ 7-8, 15, 47 & 48).  Plaintiff was in New York for less than a few months before she was told she was being assigned to the Paris office of Elite, run by Marie (*id.*, ¶¶ 9 & 10).[3]  Plaintiff alleges that when she got to Paris, she lived in Marie's apartment, where she was repeatedly raped and "trafficked" by Marie to other wealthy men around Europe (*id.*, ¶¶ 4 & 10).

According to Plaintiff, after she was in New York for a few months, Casablancas called Plaintiff into his office and told her that she was "not making the cut" as a model in New York and that he would give her one more week to improve or she would have to "move on" (FAC, ¶ 52). Before the week was out, Plaintiff was informed by Ms. Tapscott that she was being transferred from New York to Paris to further her career (*id.*, ¶¶ 3, 52 & 56) and that "she had been chosen by the head of Elite in Europe [Marie] to live in his apartment with him" (*id.*, ¶ 53).  Although Plaintiff alleges that Casablancas, as head of Elite, "*was typically responsible for approving any model leaving New York*", the decision to send Plaintiff to Paris was "*on information and belief*" Ms. Tapscott's and Marie's according to Plaintiff (*id.*, ¶ 54 (emphasis added)).[4]

---

[3] In the original Complaint, Plaintiff alleged that she "was in New York for less than a few months before she was told that she was being assigned to a new location" (*see*, Complt. [ECF No. 1] at ¶ 10).  Plaintiff alleges in the FAC that "[a]fter a short period of time in the models [sic] apartment, she moved into Ms. Tapscott's apartment" (*see*, FAC [ECF No. 23] at ¶ 9).  The allegations in the original Complaint are considered extrajudicial admissions, admissible to establish facts contained therein despite the amendment (*Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter, Inc.*, 32 F.2d 195, 198 (2d Cir. 1929), *cert. denied*, 280 U.S. 579, 50 S.Ct. 32, 74 L.Ed. 629 (1929); *United States v. McKeon*, 738 F.2d 26, 31 (2d Cir. 1984) ("A party thus cannot advance one version of the facts in its pleadings, conclude that its interests would be better served by a different version, and amend its pleadings to incorporate that version.").

[4] Earlier in the Complaint, Plaintiff alleges that Casablancas, Ms. Tapscott, "and others sent young models from New York to live in…Marie's Paris…apartment", including the Plaintiff (FAC, ¶¶ 2-3).

Ms. Tapscott allegedly told Plaintiff that Marie wanted Plaintiff to move into his home (*id.*, ¶ 3) and "*on information and belief*...knew or should have known that Marie was sexually abusing underage models" (*id.*, ¶ 39 (emphasis added)).  The basis for Plaintiff's conclusion is a reference to two alleged events that *post-date* Plaintiff's trip to Paris and alleged rape.  Ms. Tapscott allegedly prepared a memo in June of 1986 to Casablancas regarding models, *including the Plaintiff*, being sexually abused by Marie (*id.*, ¶ 41), *disclosing* (rather than concealing) Marie's alleged conduct, and, later, allegedly told Casablancas and Marie *a few years later* to leave the 13 and 14-year-old models alone (*id.*, ¶ 63).[5]  Finally, Plaintiff alleges that "[a]s an executive at Elite New York, Tapscott had the ability to prevent the sex trafficking and abuse that was occurring through Elite's New York office, but didn't" (*id.*, ¶ 65).

In the First Claim for Relief based on fraud, Plaintiff alleges that "Marie induced Plaintiff to move from New York to Paris" in order for him to help her with her modeling career, whereas his true intent was to sexually abuse her (FAC, ¶ 68).  Ms. Tapscott allegedly "told Plaintiff that Defendant Marie chose her to live in his apartment" and Plaintiff understood this to be "a very good sign for her career" (*id.*, ¶ 69).  Plaintiff alleges that Ms. Tapscott failed to tell her that Marie "was a known child predator who assaulted young models or that he was summoning Plaintiff to

---

[5] It appears that the source of the Plaintiff's "information and belief" and the majority of the allegations about the egregious behavior of Casablancas and Marie (*see*, FAC, ¶¶ 16-46) come from a book by author, Michael Gross entitled "Model: The ugly business of beautiful women" (Wm. Morrow & Co. 1995). In the book, the author describes Ms. Tapscott's memo as one of two "internal Elite memos dated June 3, 1986" that "detailed charges leveled against Marie."  The author continues: "Carré Ottis [Plaintiff] (who later gained fame when she married and broke up with actor Mickey Rourke) said she was 'sick of Gérald and all the drugs and all the women,' and charged that he would call her 'at all hours of the night [4:00 A.M.],' asking her to come see him." *Id.*, p. 400.  *See*, D'Avanzo Decl., ¶ 7 & Ex. "A".  Even assuming that this rank hearsay is true, the memo relates to events that post-date Plaintiff's alleged rape, and the sexual abuse allegedly referred to in the memo does not appear to include actual intercourse with or the rape of Plaintiff (or others).  This recounting of the contents of this alleged internal memo also suggests that Plaintiff was not living with Marie in Paris as alleged in the FAC or this fact was unknown to the memo's author.  Tellingly, Plaintiff does not allege any personal knowledge of this memo or conversation or provide any indication of their source and  its trustworthiness.

live in his apartment for that purpose" (*id.*, ¶¶ 69 & 70).[6]  According to Plaintiff, it was Ms. Tapscott's intent "to misrepresent and fail to disclose the material fact that Defendant Marie was a child predator" so as to "induce Plaintiff to move in with Defendant Marie" (*id.*, ¶ 71) and that Plaintiff justifiably relied on Defendants' "misrepresentations" and moved in with Marie, a child sex offender (*id.*, ¶ 72).  As an alleged result of these "misrepresentations", Plaintiff was "repeatedly subjected to sexual intercourse without her consent by Marie as defined by New York Penal Law Article 130.20, Sexual Misconduct, 130.25 Rape in the Third Degree, 130.35 Rape in the First Degree, 130.65 Sexual Abuse in the First Degree" (*id.*, ¶ 73)[7] and suffered damages (*id.*, ¶ 74).

The Second Claim for Relief based on negligence alleges that Ms. Tapscott owed a duty of care "as the employer, caretaker, housemother and housing provider for underage models such as Plaintiff" (FAC, ¶ 76).  Ms. Tapscott allegedly breached that duty "by sending Plaintiff to reside with a man she knew or should have known was a sex offender" (*id.*, ¶77),[8] resulting in Plaintiff "being subjected to sexual intercourse without her consent" (*id.*, ¶ 78) and suffering damages (*id.*, ¶ 79).

The Third Claim for Relief based on intentional infliction of distress alleges that Ms. Tapscott's conduct of "arranging and directing" Plaintiff to fly from New York to Paris "for the

---

[6] *See*, n. 5, *supra*.

[7] Because Plaintiff was 17 years old at the time she went to Paris (*see*, FAC, ¶ 3), she was, at least under New York law, of legal age to consent to sexual intercourse with another person (*see*, NY Penal Law § 130.05 (3) (a) ("A person is deemed incapable of consent if he or she is: (a) less than seventeen years old").  Therefore, the criminal conduct alleged against Marie are the result of him either engaging in sexual intercourse with Plaintiff against her will (NY Penal Law §§ 130.20 (1) & 130.25 (3)) or "by forcible compulsion" (§§ 130.35 (1) & 130.65 (1)).  Given the Plaintiff's age, none of the subsections of the cited criminal statutes pertaining to a "child predator", "child sexual abuse" or "statutory rape" would apply in this case.

[8] *See*, n. 5, *supra*.

purpose of child[9] sexual assault was extreme and outrageous conduct" (FAC, ¶ 81).[10]  Ms. Tapscott allegedly "had a complete disregard for the substantial probability" that Marie would "sexually assault" Plaintiff (*id.*, ¶ 82) and that this "outrageous conduct caused and resulted in" Plaintiff being "subjected to sexual intercourse without her consent" (*id.*, ¶ 83) and suffering severe emotional distress (*id.*, ¶ 84).

The Fourth Claim for Relief, which is directed only at Defendant Marie, alleges that Marie and Casablancas "reached an agreement…to send 17-year-old Plaintiff to live with Defendant Marie who was known to Casablancas to be a sex offender" (*id.*, ¶ 86) and that "in furtherance of the agreement", Casablancas "in fact sent Plaintiff to Marie's apartment in France" (*id.*, ¶ 87). Plaintiff alleges that "the two men [Casablancas and Marie] deliberately reached this agreement to further their professional interests as well as their shared interest in sexually abusing child models" (*id.*, ¶ 88).  Notably, Ms. Tapscott is omitted from this conspiracy.

## ARGUMENT

### POINT I
### THE STANDARD TO BE APPLIED BY THE COURT

When deciding a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), Fed. R. Civ. P., a court "consider[s] the legal sufficiency of the complaint, taking its factual allegations to be true and drawing all reasonable inferences in the plaintiff's favor." *Brooklyn Ctr. for Psychotherapy, Inc. v. Philadelphia Indem. Ins. Co.*, 955 F.3d 305, 310 (2d Cir. 2020) (citation

---

[9] While Plaintiff alleges throughout the FAC "child abuse" and stories of statutory rape committed by Marie and Casablancas, the fact of the matter is that Plaintiff, who was 17 years of age at the time of the alleged occurrence giving rise to her claims, was of legal age to consent to sexual intercourse with another person under New York law (*see*, n. 7, *supra*.).

[10] *See*, n. 5, *supra*.

omitted). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Honickman v. BLOM Bank SAL, 6 F.4th 487* (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liablefor the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Put another way, the plausibility requirement "callsfor enough fact to raise a reasonable expectation that discovery will reveal evidence [supportingthe claim]." *Twombly*, 550 U.S. at 556; *accord Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011). The ultimate issue "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Walker v. Schult*, 717 F.3d 119,124 (2d Cir. 2013) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## POINT II
## <u>PLAINTIFF'S CLAIMS ARE TIME BARRED</u>

"Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Ellul v. Congregation of Christian Brothers.*,774 F.3d 791, 798 n.12 (2d Cir. 2014); *see also Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989) ("Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss.");

*Roeder v. J.P. Morgan Chase & Co.*, 523 F. Supp. 3d 601, 611 (S.D.N.Y. 2021), *appeal filed* (2d Cir. Mar. 9, 2021).

This case arises from events occurring in Paris, France in 1986.  Plaintiff, a California resident at the time (*see*, FAC, ¶ 7), alleges that while she was a minor she was sexually assaulted and raped in Paris, France by Defendant, Gérald Marie, a resident of Paris, France at the time (*id*., ¶¶ 2-4 & 10).[11]  The Plaintiff has brought this action in New York in an attempt to revive her otherwise time barred causes of action in reliance on the application of CPLR § 214-g, also known as the Child Victims Act ("CVA") (*id*., ¶ 1).  The CVA, however, does not apply to: (1) non-residents such as Plaintiff; or (2) those minors who were the subject of sex crimes committed outside of New York.  As such, Plaintiff's fraud, negligence and intentional infliction of emotional distress claims against Ms. Tapscott are time barred and must be dismissed.

**A.    New York's CVA Does Not Apply To Plaintiff's Claims**

The CVA, passed on February 14, 2019, revived cases involving sexual abuse of minors, regardless of the current age of the victim, where the statute of limitations had run (NY Laws 2019, c. 11, § 3, eff. Feb. 14, 2019).  The CVA does not create a cause of action, nor does it regulate conduct.  *Giuffre v. Dershowitz*, 2020 WL 2123214 at *2, 19-cv-3377 (SDNY Apr. 8, 2020).  Significantly, the CVA does *not* revive claims where the alleged abuse occurred outside of New York.  *Holloway v. Holy See*, 2021 WL 1791456 at *2, n. 2, 19-cv-2195 (May 5, 2021).  In *Holloway*, this Court stated that "[t]he CVA is clear that it relies on New York criminal law, which does not apply to conduct [outside New York]."  *Id*. (citing *S.H. v. Diocese of Brooklyn*, 2020 WL

---

[11] Plaintiff is a currently a resident of Colorado (FAC, ¶ 5) and claims that venue of this action in the Southern District of New York is proper because Defendant Trudi Tapscott is a resident of New York and "a substantial part of the acts or omissions occurred in this District" (*id*., ¶ 6).

4730433 at *3, Index No. 517999/2019 (N.Y. Sup. Ct., Aug. 14, 2020) ("Absent an express intent otherwise, a New York statute does not apply extraterritorially.") (citations omitted)).   "[T]he CVA's legislative history confirms that the bill, as drafted and subsequently enacted, was intended to benefit New York residents alleged to have suffered wrongs committed within the state." *S.H. v. Diocese of Brooklyn*, *supra.* at *4.[12]

Here, the sexual assaults alleged by the Plaintiff occurred all in Paris France (FAC, ¶¶ 4, 10, 57-60).   As such, there was no violation of any of the New York Penal Code sections cited in the CVA, which is a condition precedent for the revival of Plaintiff's otherwise time barred claims. *See*, CPLR § 214-g; *Holloway*, *supra.*, n. 2.; *S.H.*, *supra* at *3 & *4.   As such, the CVA does not apply to Plaintiff's tort claims against Ms. Tapscott.

Additionally, the CVA was intended to benefit New York residents (*S.H. v. Diocese of Brooklyn*, *supra.* at *4).   At the time of the events set forth in the Complaint, Plaintiff "lived on her own in California's Bay Area" (FAC, ¶ 7), was signed by a modeling agency (Elite) (*id.*), was flown by Elite to their New York office (*id.*), arrived in New York in January 1986 (*id,*, ¶ 8) and was sent to Paris "[i]n the spring of 1986" (*id.*, ¶ 10).   In the original Complaint [ECF No. 1], Plaintiff described her time in New York as follows: "Plaintiff was in New York for less than a few months before she was told that she was being assigned to a new location." *Id.*, ¶ 10, *cf.* FAC, ¶ 9.[13]   To consider a place as a party's residence, the party "must stay there for some time and have a bona fide intent to retain the place as a residence for some length of time and with some degree

---

[12] The opinion in *S.H. v. Diocese of Brooklyn*, reviewing the legislative history of the CVA, was written by Hon. George J. Silver, then Deputy Chief Administrative Judge for the Courts of New York, who was assigned all CVA cases commenced in New York State for coordinated pre-trial purposes (*see*, D'Avanzo Decl., ¶ 8 & Ex. "B").

[13] *See*, n. 3, *supra*.

of permanency. Residence requires more stability then a brief sojourn for business, social or recreational activities." *Allen v. Handszer*, 148 Misc.2d 334, 560 N.Y.S.2d 593, 597 (N.Y.Sup.Ct.1990) (internal quotation and citation omitted). Plaintiff does not allege facts to support a reasonable inference that she was a resident of New York in 1986, and therefore, an intended beneficiary of New York's CVA.

**B.      Plaintiff's Claims Are Time Barred Under New York Law**

The statute of limitations for fraud in New York is six (6) years from the date the cause of action accrued or two (2) years from the time the plaintiff discovered the fraud or could have discovered it with reasonable diligence. N.Y. Civ. Prac. Law & R. (hereinafter "CPLR") § 213, subsection 8. Plaintiff has alleged that the fraud occurred in 1986 (FAC. ¶¶ 68 & 69). There are no allegations in the Complaint indicating that the fraud was discovered beyond the six-year statutory period. In fact, the allegations appear to be that Plaintiff discovered the alleged fraud "[s]hortly after arriving in Paris" (*id.*, ¶¶ 3-4). As such, Plaintiff's fraud claim is time barred.

The statute of limitations for negligence claims in New York is three (3) years from the date of injury. CPLR § 214, subsection 5. Plaintiff alleges in her Complaint that she suffered injury as a result of Ms. Tapscott's negligence in 1986 (FAC, ¶¶ 3-4, 76-79). As such, Plaintiff's negligence claim is time barred.

The statute of limitations for intentional torts in New York is one (1) year from the intentional act. CPLR § 215, subsection 3. Plaintiff alleges in her Complaint that she suffered injuries from the intentional infliction of emotional distress by Ms. Tapscott occurring in 1986 (FAC, ¶¶ 81-84). As such, Plaintiff's claim of intentional infliction of emotional distress against Ms. Tapscott is time barred.

**C.    Plaintiff's Claims Are Time Barred Under New York's Borrowing Statute**

New York's C.P.L.R. § 202 ("borrowing statute") sets forth an exception to the

general choice-of-law rule in New York and provides the statute of limitations for actions

commenced in a New York court.  *See*, *2138747 Ontario, Inc. v. Samsung C & T Corp.*, 31

N.Y.3d 372, 377 (2018).The law provides:

> An action based upon a cause of action accruing without the state cannot be
> commenced after the expiration of the time limited by the laws of either the state
> or the place without the state where the cause of action accrued, except that where
> the cause of action accrued in favor of a resident of the state the time limited by the
> laws of the state shall apply.

C.P.L.R. § 202.

"The primary purpose of CPLR 202 and its predecessors is to prevent forum shopping by

a nonresident seeking to take advantage of a more favorable Statute of Limitations in New York."

*Antone v. Gen. Motors Corp., Buick Motor Div.*, 64 N.Y.2d 20, 27–28 (1984). "When a nonresident

sues on a cause of action accruing outside New York, CPLR 202 requires the cause of action to be

timely under the limitation periods of both New York and the jurisdiction where the cause of action

accrued." *Global Fin. Corp. v Triarc Corp.*, 93 N.Y.2d 525, 528 (1999); *see also Homeward*

*Residential, Inc. v. Sand Canyon Corp.*, 499 F. Supp. 3d 18, 24 (S.D.N.Y. 2020).

The determination of whether a plaintiff is a resident of New York under CPLR § 202

turns on whether the plaintiff has "a significant connection with some locality in the State as a

result of living there for some length of time during the course of a year." *See Antone*, 64

N.Y.2d at 30. In tort cases, "a cause of action accrues at the time and in the place of the injury."

*Global Fin. Corp.*, 93 N.Y.2d at 529. For purposes of C.P.L.R. § 202, a cause of action on a

contract accrues where a plaintiff sustains its alleged injury; "[w]hen an alleged injury is purely

economic, the place of injury usually is where the plaintiff resides and sustains the economic impact of the loss." *Id.* That bright-line rule promotes Section 202's purpose of "add[ing] clarity to the law and . . . provid[ing] the certainty of uniform application to litigants." *Deutsche Bank Nat'l Trust Co. v. Barclays Bank PLC*, 34 N.Y.3d 327, 337 (2019) (quoting *Ins. Co. of N. Am. v. ABB PowerGeneration*, 91 N.Y.2d 180, 187 (1997)).

It is undisputed that Plaintiff is a resident of Colorado (FAC, ¶¶ 5 & 11). As noted above, Plaintiff was a resident of California in 1986 (Point II.A). As such, CPLR § 202 applies to this action by a non-resident of New York. Also, as noted above, the Plaintiff's claims are time barred under New York's applicable statutes of limitations (Point II.B) as New York's CVA does not apply to this action to revive these otherwise time barred claims.

The application of New York's borrowing statute requires that the claims be timely under *both* New York and the law of the place where the claims accrued. *Global Fin. Corp.*, 93 N.Y.2d at 528. The Complaint makes clear that the injuries alleged by Plaintiff occurred in Paris, France (FAC, ¶¶ 3, 4 & 10). As such, Plaintiff's causes of action, if any, accrued in 1986 in France, the time and place of the alleged injury. *Id.* at 529; *see also*, *Martin v. Julius Dierck Equipment Co.*, 43 N.Y.2d 583, 591 (1978). Under French law, Plaintiff's claims are also untimely. For procedural time limits, Article 640 of the Code of Civil Procedure of France states that when an act or a formality has to be carried out within a given period, the period is calculated from the date of the act, event, decision or service that causes it to run:

> Article 640 – Code of Civil Procedure: When an act or a formality must be performed before the expiry of a time limit, this originates from the date of the act, event, decision or notification which causes it to run.

https://www.legifrance.gouv.fr/codes/id/LEGIARTI000006411001/2022-01-16/?isSuggest=true

Under Article 2226 of the Civil Code of France, the statute of limitations for personal injury claims is 10 or 20 years, depending upon the aggravating circumstances of the conduct alleged:

> Article 2226 – Civil Code: The action for liability arising from an event having caused bodily injury, initiated by the direct or indirect victim of the resulting damage, is time-barred after ten years from the date of consolidation of the initial or aggravated damage. However, in the event of damage caused by torture or acts of barbarism, or by violence or sexual assault committed against a minor, the civil liability action is prescribed by twenty years.

https://www.legifrance.gouv.fr/codes/id/LEGIARTI000019017259/2008-06-19/;

*see also*, https://e-justice.europa.eu/content_procedural_time_limits-279-fr-en.do?member=1

Therefore, even if Plaintiff's claims were said to be revived by New York's CVA (which they were not), her claims are untimely under French law, where the claims accrued, and untimely under New York's borrowing statute.

Based upon the foregoing, the Plaintiff's Complaint should be dismissed against Defendant Trudi Tapscott pursuant to FRCP Rule 12 (b) (6) for failure to state a timely claim upon which relief can be granted.

## POINT III
## PLAINTIFF FAILS TO STATE A FRAUD CLAIM AGAINST TAPSCOTT

"Under New York law, fraud requires proof of (1) a material misrepresentation or omission of a fact, (2) knowledge of that fact's falsity, (3) an intent to induce reliance, (4) justifiable reliance by the plaintiff, and (5) damages." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*, 797 F.3d 160, 170 (2d Cir. 2015). To prevail on a motion to dismiss, the plaintiff must "assert facts that plausibly support the inference of fraud." *Id.* (citation omitted).

Further, pursuant to the Federal Rules of Civil Procedure, a "party must state with particularity the circumstances constituting [the] fraud…" Fed. R. Civ. P. 9 (b). "To satisfy this

requirement, a plaintiff should specify the time, place, speaker, and content of the alleged misrepresentations. In addition, the complaint should explain how the misrepresentations were fraudulent and plead those events which give rise to a strong inference that the defendant had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 191 (2d Cir. 2001) (internal quotations, citation, and alterations omitted). Rule 9(b) of the Federal Rules of Civil Procedure requires the plaintiff's complaint to plead the circumstances of the alleged fraudulent conduct and the defendant's mental state with heightened particularity. *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*, 797 F.3d at 171. Thus, the complaint must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Id*. (citation omitted). For the defendant's mental state, the alleged facts must "give rise to a strong inference of fraudulent intent." *Id.* (citation omitted). A strong inference "may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004) (citation omitted).

Plaintiff has failed to plead her fraud claim with particularity. She fails to identify a statement made by Ms. Tapscott, much less to allege facts that would support a strong inference of fraudulent intent of Ms. Tapscott regarding Plaintiff's "transfer" to Elite's Paris office. While the Complaint contains allegations that it was Ms. Tapscott's intent "to misrepresent and fail to

disclose the material fact that Defendant Marie was a child predator"[14] so as to "induce Plaintiff to move in with Defendant Marie" (*id*., ¶ 71) and that Plaintiff justifiably relied on Defendants' "misrepresentations" and moved in with Marie, a child sex offender, these are conclusory statements, which are insufficient.  Plaintiff does not plead the specific statement or identify when it was made. Nor does Plaintiff plausibly plead justifiable reliance on anything Ms. Tapscott did or said.  Plaintiff makes it perfectly clear that it was Casablancas and Marie who decided that Plaintiff should be sent to Paris (FAC, ¶¶ 54, 68, 86-88) and that was Marie who "induced" Plaintiff into believing that this would be good for her career (*id*., ¶ 68).

With respect to Plaintiff's allegations that Ms. Tapscott failed to tell Plaintiff that Marie "was a known child predator who assaulted young models"[15] (FAC, ¶¶ 69 & 70), there are no allegations of fact that lead to the reasonable inference that Ms. Tapscott was aware that Marie was a "child predator" or, even if she did, that she had a duty to disclose this information to Plaintiff (who, at 17, had reached the age of consent (*see*, N.Y. Penal Law § 130.05 (3) (a)).  As noted previously, Plaintiff alleges "on information and belief" that Ms. Tapscott "knew or should have known that Marie was sexually abusing underage models" (FAC, ¶ 39).  The basis for Plaintiff's conclusion is a reference to two alleged events that post-date Plaintiff's trip to Paris and alleged rape (and actually contradict the allegations that Ms. Tapscott concealed knowledge of Marie's character).  Ms. Tapscott allegedly prepared a memo in June of 1986 to Casablancas regarding models, *including the Plaintiff*, being sexually abused by Marie (*id*., ¶ 41) and allegedly told Casablancas and Marie *a few years later* to leave the 13 and 14-year-old models alone (*id*., ¶ 63).

---

[14] *See*, n. 7 & 9, *supra*.
[15] *See*, n. 7 & 9, *supra*.

It appears that the source of these allegations and the majority of the allegations about the egregious behavior of Casablancas and Marie (*see*, FAC, ¶¶ 16-46) come from a book by author, Michael Gross entitled "Model: The ugly business of beautiful women" (Wm. Morrow & Co. 1995).  *See*, D'Avanzo Declar., ¶ 7 & Ex. "A".  In the book, the author describes Ms. Tapscott's memo as one of two "internal Elite memos dated June 3, 1986" that "detailed charges leveled against Marie." The author continues: "Carré Ottis [Plaintiff] … said she was 'sick of Gérald and all the drugs and all the women,' and charged that he would call her 'at all hours of the night [4:00 A.M.],' asking her to come see him." *Id.*, p. 400.  Even assuming that this rank hearsay is true, the memo relates to events that post-date Plaintiff's alleged rape, and the sexual abuse allegedly referred to in the memo does not appear to include actual intercourse with or the rape (statutory or otherwise) of Plaintiff.[16]  Therefore, there are only conclusory statements, weakly based on "information and belief", made as to Ms. Tapscott's alleged knowledge of Marie being a child rapist at the time Ms. Tapscott and Plaintiff allegedly spoke about Plaintiff going to Paris, none of which are supported by the factual allegations, even if they are assumed true by the Court.

Moreover, Ms. Tapscott had no legal duty to disclose what she knew or may have known about Marie's character or past misconduct, even if she did know of it.  "[A] concealment of facts

---

[16] If Ms. Tapscott's complaints to Elite New York about Marie were accurately memorialized as quoted by the author, Plaintiff will not be able to establish that Ms. Tapscott knew or should have known that Marie was a child rapist. When it comes to establishing the actual or constructive knowledge of foreseeable criminal conduct of a third party, plaintiff must establish that the defendant knew or should have known of the third-party's "*propensity for the conduct which caused the injury.*" *Schiffer v. Sunrise Removal, Inc.*, 62 A.D.3d 776, 779, 879 N.Y.S.2d 518 (2d Dept. 2009) (emphasis added); *Bellere v. Gerics*, 304 A.D.2d 687, 759 N.Y.S.2d 105 (2d Dept. 2003); *see*, *e.g.*, *Marilyn S. v. Independent Group Home Living Program, Inc.*, 73 A.D.3d 892, 903 N.Y.S.2d 403, 406 (2d Dept. 2010); *Jackson v. New York University Downtown Hosp.*, 69.A.D.3d 801, 893 N.Y.S.2d 235 (2d Dept. 2010); *Kenneth R. v. Roman Catholic Diocese of Brooklyn*, 229 A.D.2d 159, 161, 654 N.Y.S.2d 791 (2d Dept. 1997). This clearly means that the defendant must have prior knowledge of the precise behavior that actually occurred. The cases emphasize that "generalized knowledge" that someone is "a bad actor" simply does not support liability.

supports a cause of action for fraud only if the non-disclosing party has a duty to disclose." *Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*, 68 F.3d 1478, 1483 (2d Cir. 1995). Such a duty "ordinarily arises where the parties are in a fiduciary or other relationship signifying a heightened level of trust." *Id.* "[W]hen parties deal at arms-length in a commercial transaction, no relation of confidence or trust sufficient to find the existence of a fiduciary relationship will arise absent extraordinary circumstances." *In re Mid-Island Hosp., Inc.*, 276 F.3d 123, 130 (2d Cir. 2002) (citation omitted). Under New York law, the relationship between a fashion model and her model management company is not a fiduciary relationship. *Raske v. Next Management, LLC*, 40 Misc. 3d 1240(A) (Sup. Ct., NY County 2013) ("Courts have held repeatedly that the relationship between professional models and modeling agencies do not give rise to any fiduciary obligation on the part of the modeling agency [citations omitted]."). The Complaint does not allege any facts supporting a claim that the relationship between Ms. Tapscott and Plaintiff gave rise to a duty to disclose (even if Ms. Tapscott knew that Marie was a "child predator" or knew of his intentions with respect to Plaintiff, which has no factual basis. Ms. Tapscott was not an employer of Plaintiff, not a guardian of Plaintiff, and not an officer, member of the board or shareholder of Elite New York (*see*, FAC, ¶¶ 14).

Nor do the allegations against Ms. Tapscott give rise to any reasonable inference of her intent to mislead or defraud the Plaintiff, much less the "strong inference" of intent required of the Plaintiff's pleading. *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 191 (2d Cir. 2001); *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004). Plaintiff's allegations actually contradict such an inference. Plaintiff alleges that Ms. Tapscott wrote an internal memo reporting to the founder of Elite, John Casablancas, *complaints* about Marie's

sexual abuse of models, "including Plaintiff" (FAC, ¶ 41).  Assuming this is true, it shows a lack of knowledge and intent on the part of Ms. Tapscott to mislead or defraud Plaintiff.  *Ajinomoto Co. v. CJ CheilJedang Corp.*, No. 1:16-CV-03498 (MKV), 2021 WL 4430200, at *3 (S.D.N.Y. Sept. 27, 2021) (FRCP Rule 8(d) "does not give plaintiffs 'license to plead inconsistent assertions of facts within the allegations that serve as the factual predicates for an independent, unitary claim.'") (quoting *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 407 (S.D.N.Y. 2001).

Based on the foregoing, the Plaintiff's First Claim for Relief based on fraud should be dismissed as to Defendant Tapscott.

## POINT IV
## THE NEGLIGENCE CLAIM AGAINST TAPSCOTT SHOULD BE DISMISSED

Plaintiff's novel negligence theory seems to be that Ms. Tapscott, an employee of Elite New York (FAC, ¶ 14), is liable for the criminal conduct of the principal officer (Marie) of an affiliate company (Elite Paris) (*id.*, ¶¶ 2 - 10) committed in Paris against a fashion model (Plaintiff), whose modeling career is being managed by Elite Corp. (*id.*).

To prevail on a negligence claim, a plaintiff must demonstrate: (1) the existence of a duty; (2) a breach of that duty; and (3) that the breach was a proximate cause of his or her injuries. *Solomon by Solomon v. City of New* York, 499 N.Y.S.2d 392, 66 N.Y.2d 1026, 489 N.E.2d 1294 (1985); *Mojica v. Gannett Company, Inc.*, 71 A.D.3d 963, 897 N.Y.S.2d 212 (2d Dept. 2010). Under the law of New York, the issue of whether a defendant owes a duty of care to a plaintiff is a question of law for the courts.  *Purdy v. Public Adm'r. of County of Westchester*, 72 N.Y.2d 1, 8, 530 N.Y.S.2d 513, 526 N.E.2d 4 (1988); *Engelhart v. County of Orange*, 16 A.D.3d 369, 790 N.Y.S.2d 704 (2d Dept. 2005).

19

Indeed, the New York Court of Appeals has specifically stated that the threshold issue, in any negligence case, is whether the identified defendant (in this instance Ms. Tapscott) owes a duty directly to the Plaintiff:

> The threshold question in any negligence action is: does a defendant owe a legally recognized duty of care to plaintiff? Courts traditionally "fix the duty point by balancing factors, including the reasonable expectations of parties and society generally, the proliferation of claims, the likelihood of unlimited or insurer-like liability, disproportionate risk and reparation allocation, and public policies affecting the expansion or limitation of new channels of liability.

*Hamilton v. Beretta U.S.A. Corp.,* 96 N.Y.2d 222, 232, 727 N.Y.S.2d 7, 750 N.E.2d 1055 (2001) (citing, *Palka v. Servicemaster Mgt Servs. Corp.*, 83 N.Y.2d 579, 586, 611 N.Y.S.2d 817, 634 N.E.2d 189 (1994); *Strauss v. Belle Realty Co.*, 65 N.Y.2d 399, 402-03, 492 N.Y.S.2d 555, 482 N.E.2d 34 (1985)).  It is imperative that the plaintiff be able to show that the defendant "owed *not merely a general duty to society* but a specific duty to him or her, for '*without a duty running directly to the injured person there can be no liability in damages, however careless the conduct or foreseeable the harm.*'" *Id.* (citing, *Lauer v. City of New York*, 95 N.Y.2d 95, 100, 711 N.Y.S.2d 112, 733 N.E.2d 184 (2000)) (emphasis added).  The purpose of requiring a direct duty – from defendant to the individual plaintiff – is to avoid the imposition of virtually limitless liability "to an indeterminate class of persons conceivably injured by any negligence in that act." *Id.*  (citing, *Eiseman v. State*, 70 N.Y.2d, 188, 518 N.Y.S.2d 608, 511 N.E.2d 1128 (1987)).

In determining whether one party owes a duty to another, there must be some determinable relationship between the two that will logically support the imposition of such a duty. *See, Eisenman v. State,* 70 N.Y.2d 175, 188, 518 N.Y.S.2d 608, 511 N.E.2d 1128 (1987).  The courts must take care to limit "the universe of permissible plaintiffs because a failure to do so would

impose a duty of reasonable care enforceable by any member of an indeterminate class of persons, present and prospective, known and unknown, directly or indirectly injured by any negligence." *Id.* New York courts have repeatedly cautioned that there is generally no duty to control the conduct of third persons so as to prevent them from causing injury to others. *Mojica*, 71 A.D.3d 963; *Engelhart*, 16 A.D.3d 369. This is so even where "as a practical matter" the defendant can exercise such control. *Hamilton*, 96 N.Y.2d at 233; *D'Amico v. Christie*, 71 N.Y.2d 76, 88, 524 N.Y.S.2d 1, 518 N.E.2d 896 (1987).

This reluctance to impose a duty to control the conduct of others "grows out of practical concerns both about potentially limitless liability and about the unfairness of imposing liability for the acts of another." *Hamilton*, 96 N.Y.2d at 233 ("[W]e have been cautious, however in extending liability to defendants for their failure to control the conduct of others"); *People v. Sturm, Ruger & Co.*, 309 A.D.2d 91, 761 N.Y.S.2d 192, 196 (1st Dept. 2003) ("[t]his judicial resistance to the expansion of duty grows out of practical concerns both about potentially limitless liability and about the unfairness of imposing liability for the acts of another."). The First Department warned that "lawsuits employed to address a host of societal problems would be invited into the courthouse whether the problems they target are real or perceived … regardless of the remoteness of their actual cause or of their foreseeability; and regardless of the existence, remoteness, nature and extent of any intervening causes between defendants' … conduct and the alleged harm." *People v. Sturm, Ruger & Co.*, 761 N.Y.S.2d at 196-97. Indeed, courts have been especially reluctant to broaden the concept of duty where the injury alleged against the defendant is the infliction of emotional distress. *Lauer*, 95 N.Y.2d at 116.

The Second Claim for Relief based on negligence alleges that Ms. Tapscott owed a duty of care "as the employer, caretaker, housemother and housing provider for underage models such as Plaintiff" (FAC, ¶ 76). Ms. Tapscott allegedly breached that duty "by sending Plaintiff to reside with a man she knew or should have known was a sex offender" (*id*., ¶77). The allegations in the Complaint do not support a conclusion that Ms. Tapscott was Plaintiff's "employer", "caretaker" "housemother" or "housing provider". Plaintiff alleges that Casablancas paid for her to move to New York in Elite's model apartment in Manhattan (FAC, ¶ 48). Ms. Tapscott was allegedly head of the New Faces division and "in charge of overseeing all new models in New York" (*id*., ¶ 50) and "overseeing" the model apartments (*id*., ¶ 51). Based on these allegations, Elite, not Ms. Tapscott provided housing for Plaintiff while she was in New York. Significantly, there are no allegations supporting a conclusion that Ms. Tapscott was Plaintiff's "caretaker" or "employer". As such the bases for Plaintiff's claim that Ms. Tapscott owed a common law duty of care to Plaintiff are without factual foundation. Plaintiff's lack of factual support for the conclusion that Ms. Tapscott "knew or should have known" that Marie was a sex offender as already been discussed previously and established (*see*, Point III, *supra*.). Based on the foregoing, Plaintiff's Second Claim for Relief based on negligence should be dismissed as against Defendant Tapscott.

### POINT V
### THE CLAIM FOR INTENTIONAL INFLICTION OF
### <u>EMOTIONAL DISTRESS SHOULD BE DISMISSED</u>

The Plaintiff's Third Claim for Relief is based on an alleged intentional infliction of emotional distress by Ms. Tapscott. The four elements of a cause of action for intentional infliction of emotional distress under New York law are: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal

connection between the conduct and injury; and (iv) severe emotional distress.  *Chanko v. American Broadcasting Companies, Inc.*, 27 N.Y.3d 46, 56, 29 N.Y.S.3d 879, 886, 49 N.E.3d 1171, 1178 (2016) (*citing Howell v. New York Post Co.*, 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350, 612 N.E.2d 699 (1993). " 'Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community' " *Id.* (*Howell*, 81 N.Y.2d at 122, 596 N.Y.S.2d 350, 612 N.E.2d 699 [internal quotation marks and citation omitted], quoting *Murphy v. American Home Prods. Corp.*, 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983)).  These requirements "are rigorous, and difficult to satisfy."  *Howell*, 81 N.Y.2d at 122, 596 N.Y.S.2d 350, 612 N.E.2d 699.

Here, Plaintiff alleges that Ms. Tapscott's conduct of "arranging and directing" Plaintiff to fly from New York to Paris "for the purpose of child sexual assault was extreme and outrageous conduct" (FAC, ¶ 81).  Ms. Tapscott allegedly "had a complete disregard for the substantial probability" that Marie would rape Plaintiff (*id.*, ¶ 82) and that this "outrageous conduct caused and resulted in" Plaintiff being raped (*id.*, ¶ 83) and suffering severe emotional distress (*id.*, ¶ 84).

As previously noted, it was Casablancas and Marie who "arranged and directed" Plaintiff to fly from New York to Paris. According to Plaintiff's own allegations, Casablancas and Marie "were in charge of Elite Model Management from 1985 to 2010, each as the head of the modeling world's two epicenters, New York and Paris (*id.*, ¶ 15).  Plaintiff "was chosen by the head of Elite in Europe [Marie] to live in his apartment with him" (*id.*, ¶ 53; *see also*, ¶ 10).  Casablancas "was typically responsible for approving any model leaving New York" (*id.*, ¶ 54).  "Elite sent Plaintiff to Paris on a short-term visa" (*id.*, ¶ 55).  "Defendant Marie induced Plaintiff to move from New

York to Paris France under the guise that he would do so to help her modeling career" (*id.*, ¶ 68). "Defendant Tapscott told Plaintiff that Defendant Marie chose her to live in his apartment [in Paris]" (*id.*, ¶ 69). "Marie reached an agreement with John Casablancas to send 17-year-old Plaintiff to live with Defendant Marie" (*id.*, ¶ 86), and "[i]n furtherance of this agreement, John Casablancas in fact sent Plaintiff to Marie's apartment in France" (*id.*,¶ 87). As a result of this alleged agreement between Marie and Casablancas, Plaintiff was subjected to sexual intercourse without consent (*id.*, 89). Moreover, Ms. Tapscott was a low-level employee of Elite New York and had no authority to direct models in New York to go to Elite Paris (*id.*, ¶¶ 15 & 54).

The Plaintiff's own allegations contradict the alleged "purpose" of the transfer from New York to Paris (FAC, ¶ 81 ("for the purpose of child sexual assault")). While Plaintiff alleges throughout the FAC "child abuse" and stories of statutory rape committed by Marie and Casablancas, the fact of the matter is that Plaintiff, who was 17 years of age at the time of the alleged occurrence giving rise to her claims (*id.*, ¶ 3), was of legal age to consent to sexual intercourse with another person under New York law. *See*, N.Y. Penal Law § 130.05 (3) (a) ("A person is deemed incapable of consent if he or she is: (a) less than seventeen years old"). Therefore, the criminal conduct alleged against Marie are the result of him either engaging in sexual intercourse with Plaintiff against her will (N.Y. Penal Law §§ 130.20 (1) & 130.25 (3)) or "by forcible compulsion" (§§ 130.35 (1) & 130.65 (1)). None of the criminal statutes cited in the Complaint (FAC, ¶¶ 73, 78 & 83) would pertain to a "child predator", "child sexual abuse" or "statutory rape" of a 17-year-old. And none of the factual allegations impute to Ms. Tapscott knowledge that Marie would forcibly rape Plaintiff (*see*, Points III & IV, *supra*).

Based on the foregoing, there is no factual underpinning for the conclusory statement that it was Ms. Tapscott's "arranging and directing" of Plaintiff to fly from New York to Paris that caused Plaintiff to be sexually assaulted by Marie. Nor is there any factual support for the conclusory statement that Ms. Tapscott's "participation" in Plaintiff's transfer from New York to Paris was "for the purpose of child sexual assault".  At most, Ms. Tapscott informed Plaintiff of a decision made by Casablancas and Marie that she would be going to Elite Paris (FAC, ¶ 53). Therefore, Ms. Tapscott could not have acted in "complete disregard for the substantial probability" of what would happen to Plaintiff in Paris as she had no knowledge of such conduct by Marie in the past and there are no allegations in the Complaint inferring otherwise.

Therefore, Plaintiff's Third Claim for Relief for intentional infliction of emotional distress against Defendant Tapscott should be dismissed.

## **CONCLUSION**

Based upon the foregoing, the pleadings and the papers submitted on this motion, the Defendant, Trudi Tapscott, respectfully prays for an order pursuant to FRCP Rule 12 (b) (6) dismissing the Plaintiff's Complaint for failure to state a claim upon which relief can be granted, together with such other and further relief as this Court may deem just, proper and equitable.

Dated: January 19, 2022

Respectfully submitted,

PASHMAN STEIN WALDER HAYDEN, P.C.

By: *Joseph A. D'Avanzo*

Joseph A. D'Avanzo, Esq.
*Attorneys for Defendant Trudi Tapscott*
2900 Westchester Avenue, Suite 204
Purchase, New York 10577
Tel. No.: (914) 612-4091
jdavanzo@pashmanstein.com