**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CARRÉ OTIS SUTTON,

       Plaintiff,

       v.

GÉRALD MARIE, AKA GÉRALD MARIE
CASTELLAC, an Individual, and TRUDI
TAPSCOTT, an Individual.

       Defendants.

Case No.: 1:21-cv-06787 (MKV)

## MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANT TAPSCOTT'S MOTION TO DISMISS

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................... 1

FACTUAL BACKGROUND ....................................................................................... 1

ARGUMENT .............................................................................................................. 5

I.      TAPSCOTT'S MOTION VIOLATES THE 12(B)(6) STANDARD.............................. 5

II.     THE MOTION DOES NOT "CLEARLY SHOW" THAT PLAINTIFF'S CLAIMS ARE
        TIME BARRED............................................................................................... 6

        A.     Plaintiff had No Obligation to Plead Facts Demonstrating the Timeliness of Her
               Claims ........................................................................................................ 6

        B.     Plaintiff's Claims Are Revived by the Child Victims Act.................................... 8

        C.     The Borrowing Statute Does Not Apply............................................................ 11

III.    PLAINTIFF'S CLAIMS ARE SUFFICIENTLY PLEADED........................................ 14

        A.     Plaintiff has Alleged Sufficient Facts Plausibly To Infer the Existence of a Duty
               Owed By Tapscott, as Necessary to Support Plaintiff's Negligence Claim. ....... 14

        B.     Plaintiff's Fraud Claim Satisfies the Heightened Pleading Requirements .......... 16

        C.     Intentional Infliction of Emotional Distress is Plausibly Pleaded ...................... 22

CONCLUSION.......................................................................................................... 22

# TABLE OF AUTHORITES

**Cases**

2002 Lawrence R. Buchalter Alaska Tr. v. Philadelphia Fin. Life Assur. Co., 96 F. Supp. 3d 182, 206 (S.D.N.Y. 2015) ........................................................................................................... 6

Ackerman v. Price Waterhouse, 644 N.E.2d 1009, 1013 (N.Y. 1994) ....................................... 11

Adams v. Crystal City Marriott Hotel, No. 02 Civ. 10258 PKL, 2004 WL 744489 (S.D.N.Y. Apr. 6, 2004) ........................................................................................................................... 14

Allen v. Handszer, 148 Misc.2d 334, 341 (N.Y. Sup. Ct. 1990). ............................................... 12

Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 45 (2d Cir. 1991) .......................................... 19

Amorosi v. S. Colonie Indep. Cent. Sch. Dist., 880 N.E.2d 6, 10 (N.Y. 2007) ......................... 10

Antone v. Gen. Motors Corp., Buick Motor Div., 473 N.E.2d 742, 746 (N.Y. 1984). ......... 12, 13

Ashcroft v. Iqbal, 556 U.S. 662, 686-87 (2009) ........................................................................ 18

Basquiat v. Sakura Int'l, No. 04 Civ. 1369(GEL), 2005 WL 1639413, at *6 n.5 (S.D.N.Y. July 5, 2005) ................................................................................................................................. 19

Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150-51 (2d Cir. 1993) ....................................... 20

Cohen v. S.A.C. Trading Corp., 711 F.3d 353, 360 (2d Cir. 2013) ............................................ 16

Concord Assocs., L.P. v. Entm't Props. Tr., 817 F.3d 46, 51 n.2 (2d Cir. 2016) ................... 6, 16

Davis v. S. Nassau Comms. Hosp., 46 N.E.3d 614, 618 (N.Y. 2015) ........................................ 15

Doe v. Baram, No. 20 Civ. 9522 (ER), 2021 WL 4847076, at *4 (S.D.N.Y. Oct. 15, 2021) . 7, 11

Eaton v. Keyser, 53 A.D.3d 1029, 1030-31 (N.Y. App. 2008) ............................................ 13, 14

Eurycleia Partners, LP v. Seward & Kissel, LLP, 910 N.E.2d 976, 979 (N.Y. 2009) ............... 16

Fargas v. Cincinnati Mach., LLC, 986 F.Supp.2d 420, 427 (S.D.N.Y. 2013) ................. 13, 14, 15

Giuffre v. Andrew, 2022 WL 118645, at *16 ......................................................................... 7, 11

Giuffre v. Dershowitz, No. 19 Civ. 3377 (LAP), 2020 WL 2123214, at *2 (S.D.N.Y. Apr. 8, 2020) ..................................................................................................................................... 9

Global Fin. Corp. v. Triarc Corp., 715 N.E.2d 482, 480 (N.Y. 1999) ....................................... 11

Holloway v. Holy See, 537 F.Supp.3d 502 (S.D.N.Y. 2021) ............................................... 8, 9, 14

Holmes v. Lorch, 329 F.Supp.2d 516, 526-27 (S.D.N.Y. 2004) ................................................ 21

Koch v. Christie's Int'l PLC, 699 F.3d 141, 145 (2d Cir. 2012) ................................................. 5

Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290-91 (2d Cir. 2006) ............................................. 18

Lisa I. v. Manikas, 188 A.D.3d 1392, 1394 (N.Y. App. 202 .................................................... 15

Lorely 707 F. 3d ........................................................................................................................ 17

Mandarin Trading Ltd. v. Wildenstein, 16 N.Y.3d 173, 179 (2011) ......................................... 19

McDougal v. Fox News Network, LLC, 489 F.Supp.3d 174, 177 n.1 (S.D.N.Y. 2020) (Vyskocil, J.) ........................................................................................................................................... 5

Mary A. "ZZ" v. Blasen, 284 A.D.2d 773, 775 (N.Y. App. 2001) ........................................... 15

Mei Xing Yu v. Hasaki Rest., Inc., 944 F.3d 395, 414 (2d Cir. 2019) ...................................... 10

Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A., 14 F.Supp.3d 191, 210 (S.D.N.Y. 2014) ........................................................................................................................................... 13,14

Oawlawolwaol v. Boy Scouts of Am., No. 21-CV-4714 (PKC)(JMW), 2021 WL 4355880, (E.D.N.Y. Sept. 24, 2021) ...................................................................................................... 7

PC-41 Doe v. Poly Prep Country Day Sch., No. 20-CV-03628(DG)(SJB), 2021 WL 4310891, (E.D.N.Y. Sept. 22, 2021) ................................................................................................ 5, 19

Penato v. George, 52 A.D.2d 939, 942 (N.Y. App. 1976) ................................................... 19, 20

Penske Media Corp. v. Shutterstock, Inc., F.Supp.3d, No. 1:20-CV-04583 (MKV), 2021 WL 2894809 (S.D.N.Y. 2021) ........................................................................................ 6

People v. Carvajal, 845 N.E.2d 1225, 1231 (N.Y. 2005) ........................................ 11

People v. Kassebaum, 744 N.E.2d 694, 697 (N.Y. 2001) .......................................... 9

People v. Lin, 278 A.D.2d 114, 114 (N.Y. App. 2000) .............................................. 9

People v. Page, 149 N.E.3d 905, 912 (N.Y. 2020) .................................................. 10

Phillips v. City of Middletown, No. 17-CV-5307(CS), 2018 WL 4572971, at *4 (S.D.N.Y. Sept. 4, 2018) ................................................................................................ 12

Raske v. Next Mgmt., LLC, 40 Misc.3d 1240(A) (N.Y. Sup. Ct. 2013)................................... 20

Remington Ran d Corp. v. Amsterdam-Rotterdam Bank, N.V., 68 F.3d 1478, 1484 (2d Cir. 1995) ............................................................................................................ 21

S.E.C. v. Gabelli, 653 F.3d 49, 60 (2d Cir. 2011), rev'd on other grounds, 568 U.S. 442 (2013) 6

S.H. v. Diocese of Brooklyn, No. 517999/2019, 2020 NY Slip Op 32648(U), 2020 WL 4730433 (N.Y. Sup. Ct. Aug. 14, 2020) (unpublished) ............................................ 8, 9, 10

Slayton v. Am. Exp. Co., 460 F.3d 215 (2d Cir. 2006). .......................................... 12

Smith v. Soros, No. 02 Civ. 4229 JGK, 2003 WL 22097990, at *5 (S.D.N.Y. Sept. 5, 2003) ... 14

Staehr v. Hartford Fin. Servs. Grp., Inc., 547 F.3d 406, 425 (2d Cir. 2008) ................................ 6

Stephanie L. v. House of Good Shepherd, 186 A.D.3d 1009, 1014 (N.Y. App. 2020)............... 15

Tran v. Alphonse Hotel Corp., 281 F.3d 23, 32 (2d Cir. 2002)................................... 12

Whiteside v. Hover-Davis, 995 F.3d 315, 321 (2d Cir. 2021)................................. 6, 7

**Other Authorities**

N.Y. Penal L. § 130 ................................................................................. 9, 10, 11

N.Y. Penal L. § 20 ...................................................................................... 9, 11

**Rules**

Fed. R. Civ. P. 8.............................................................................................. 6

Fed. R. Civ. P. 9.............................................................................................. 17

Fed. R. Civ. P. 12......................................................................................... 5, 6, 7, 22

N.Y. Civ. Prac. Law & R.  § 202 ................................................................ 9, 11, 12

N.Y. Civ. Prac. Law & R.  § 214 ............................................................... 5, 7, 8, 10

## INTRODUCTION

Defendant's Motion to Dismiss ("Motion") under FRCP 12(b)(6) erroneously alleges that Plaintiff's claims are clearly untimely on their face and not sufficiently pleaded.  In doing so, she asks the Court to weigh evidence and incorporate additional evidence not in the complaint to impute restrictions that are indisputably not found in the New York Child Victims Act ("CVA").  At best, the Motion is premature and should be held until the completion of following discovery.  As explained below, the instant action is properly pleaded on all claims and as such the Motion should be denied.

## FACTUAL BACKGROUND

Plaintiff, a homeless and jobless 16-year-old child runaway in California, was recruited by Elite Model Management ("Elite") to move to New York City to become a model.  First Am. Compl., ECF #24 ("FAC") ¶¶ 7-8, 47-48.  Desperate for money, Plaintiff jumped at the opportunity to move to New York and pursue what she thought was a promising new career.  *Id.* Without so much as consulting her parents, Elite flew Plaintiff to New York in January 1986 and arranged for her to reside in one of their model apartments, with the model apartment becoming her sole residence.  FAC ¶¶ 7-8, 48.

In New York, as was too often the case for child models, *see* FAC ¶ 28, Plaintiff completely depended on Elite's employees, given that she was in a big new city and had no money or resources other than what Elite provided.  FAC ¶¶ 8-9, 28; *see* FAC ¶¶ 7, 14, 47-48, 50.  Plaintiff was particularly dependent on one employee of Elite, Defendant Trudi Tapscott.  FAC ¶¶ 9, 14, 50, 76.  Tapscott was head of Elite's important "New Faces" division in New York, was in charge of all the new models and was "primarily responsible" for taking care of Plaintiff.  FAC ¶ 50; *see also* FAC ¶¶ 9, 14, 50-54, 76.  When Plaintiff first arrived in New York, Elite housed her with five other young models in a Manhattan apartment, which Tapscott managed.  FAC ¶¶ 8, 14, 48, 51.

As was common with new models at Elite, Plaintiff had no paying modeling jobs and quickly found herself in significant debt to Elite. FAC ¶¶ 8-9. During Plaintiff's residence in New York, Tapscott acted as "a housemother" for Plaintiff and the other child models in charge of their housing, their "transportation to jobs" and attended to "any other basic needs" of the underage models in their new home. FAC ¶ 14; *see also* FAC ¶¶ 50-51, 76. After living in the models' apartment for a few months, Plaintiff was moved into Tapscott's apartment, giving Tapscott complete control over her housing, food, and care and wellbeing. FAC ¶¶ 9, 14.

In addition to these housemother duties, Tapscott played a significant role in determining the trajectory of this young Plaintiff's new career as a model. *See* FAC ¶¶ 14, 50-54. It was well-known among the models that Tapscott "played favorites," and had control over whether they received modelling opportunities, FAC ¶ 51, and Plaintiff did not get any work during her time in New York, FAC ¶ 9.

After a few months of no work, Plaintiff was called into the New York office of Elite executive John Casablancas, who told Plaintiff that she not making the cut and that she would have to move on unless she got some good photographs within the next week. FAC ¶ 52. Tapscott discussed with Plaintiff and told her that "she would be sent from New York to another one of Elite Europe's agencies like Milan or Paris." *Id.*

Before the week was out, Tapscott informed Plaintiff that she had been chosen by Gerald Marie ("Marie"), the head of Elite's Europe division, to stay with him in his private apartment. FAC ¶ 53. Tapscott indicated that this new assignment was for the purpose of helping Plaintiff's anemic career start. FAC ¶¶ 3, 53, 56, 69. Plaintiff trusted Tapscott and had seen others go to work in Paris—albeit always residing in Elite's model apartment there and not Marie's private apartment. FAC ¶¶ 53, 56, 72. However, unbeknownst to Plaintiff and undisclosed by Tapscott,

she was heading to France for an entirely different purpose—to be sexually abused by Marie, a well-known sexual predator in the industry. FAC ¶¶ 10, 56, 69; *see* FAC ¶¶ 2-3, 12-13, 33-40. Plaintiff was sent by Elite to Paris on a short-term visa from her residence in New York, hoping that a stint overseas would help boost her modeling career upon her return to New York. FAC ¶¶ 3, 53, 55.

Plaintiff soon discovered otherwise and Marie began forcibly sexually assaulting Plaintiff shortly after her arrival. FAC ¶¶ 3-4, 10, 60-62, 73. Plaintiff was never paid for any modeling work in Paris and was completely at the mercy of Marie. FAC ¶¶ 3-4, 10, 58-62; *see also* FAC ¶¶ 28-30. The abuse continued over a "span of months," during which Plaintiff was repeatedly raped by Marie in his apartment and trafficked by Elite to other wealthy men throughout Europe without her consent. FAC ¶¶ 4, 10, 60-62.

The Complaint is replete with allegations that Tapscott knew Marie's true purpose in asking for Tapscott to come to Paris and stay in his private residence. FAC ¶¶ 39, 54, 70. First, at the time, Marie had already gained significant notoriety within both Elite's ranks and the modeling community at large as a sexual predator who habitually assaulted young female models like Plaintiff. FAC ¶¶ 31-40. For instance, Elite executives such as Casablancas—with whom Tapscott "worked closely," FAC ¶ 14; *e.g.*, FAC ¶¶ 41, 50, 52, 63—knew about Marie's predatory tendencies and, prior to merging their agencies in 1985, feared that Marie's reputation as a sexual predator was so widespread that their mere association could be bad for business, *see* FAC ¶¶ 36-39. Elite executive Marie Anderson stated that, at the time, everyone knew Gerald was a sexual predator. FAC ¶ 40. Second, Tapscott herself admitted knowing Marie was a predator shortly after Plaintiff was sent to Paris. In June 1986, Tapscott shared a memo with Casablancas describing Marie's abuse of multiple models including Plaintiff. FAC ¶ 41. Tapscott took no

further action to help Plaintiff, while Casablancas merely warned Marie to be more cautious so that he wouldn't be publicly exposed for his conduct.  FAC ¶¶ 42, 65.

Tapscott's own statements in the wake of the abuse further demonstrate the extent to which she was aware of and complicit in the wrongdoings at Elite:

- A few years after transferring Plaintiff to Paris, Tapscott, who was still an executive at Elite, was overheard telling Marie and Casablancas to "leave the 13- and 14-year-old girls alone," insinuating that she was aware of yet not concerned with his abuse of older children such as Plaintiff.  FAC ¶ 63.

- Tapscott would later attempt to justify her actions by claiming that in regard to the child sexual abuse, "My answer was always that no one ever did anything they didn't want to."  FAC ¶ 64.

- Finally, in a recent interview, Tapscott seemingly acknowledged that she could have put an end to the abuse but chose not to, stating, "I have tremendous regret about not doing more at the time."  FAC ¶ 66.

To date, Marie has been accused of raping at least 15 models under his supervision, several of whom were underage, and he is currently under criminal investigation for several of these assaults.  FAC ¶ 13  Plaintiff, who now resides in Colorado, abandoned her New York career for several years after the abuse though later, through her own determination and without Elite, became a very successful model.  FAC ¶ 11.  Tapscott still lives in New York City, where she continues to work in the modeling industry.  FAC ¶ 14.

Plaintiff initiated this diversity action against Tapscott and Marie following New York's enactment of the Child Victims Act ("CVA"), which created a temporary window for revival of "every civil claim or cause of action brought against any party" for injuries "suffered as a result of

conduct which would constitute a sexual offense as defined in article [130] of the penal law committed against a child less than eighteen years of age." N.Y. Civ. Prac. Law & R. ("CPLR") 214-g. The CVA was adopted in recognition of the fact that New York's restrictive statutes of limitations require most survivors of childhood sexual abuse to bring claims "long before most survivors report or come to terms with their abuse, which has been estimated to be as high as 52 years old on average." *PC-41 Doe v. Poly Prep Country Day Sch.*, No. 20-CV-03628(DG)(SJB), 2021 WL 4310891, at *7 (E.D.N.Y. Sept. 22, 2021) (quoting N.Y. State Assembly Mem. Supp. Legislation, reprinted in Bill Jacket for 2019 S.B. 2440, Ch. 11, at 7 (Jan. 29, 2019)). And Plaintiff, a 52-year-old former resident of New York, filed this action. FAC ¶ 7.

## ARGUMENT

### I.   TAPSCOTT'S MOTION VIOLATES THE 12(b)(6) STANDARD

In evaluating a Rule 12(b)(6) motion, "the Court must 'accept as true the facts alleged in the Complaint, drawing all reasonable inferences in favor of the plaintiff.'" *McDougal v. Fox News Network, LLC*, 489 F.Supp.3d 174, 177 n.1 (S.D.N.Y. 2020) (Vyskocil, J.) (quoting *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Tapscott acknowledges this standard but then provides and relies significantly on her own factual narrative, suggesting, for instance, that she was merely "a low-level employee of Elite New York" with "no authority." Memorandum of Law in Support of Motion to Dismiss, ECF #25-4 ("Def. Mem."), at 24; *see, e.g.*, *id.* at 1-2. This directly contradicts the Complaint, which alleges that "[a]t all relevant times, Defendant Tapscott was a high-level executive at Elite" who "oversaw the new models," including Plaintiff. FAC ¶ 14; *see also* FAC ¶¶ 50-51.

Mostly through footnotes, Tapscott also asks this Court to consider several extrinsic documents with this motion, including her counsel's declaration, ECF #25-1; excerpts of a book never mentioned or alluded to in the Complaint, ECF #25-2; and a prior version of the Complaint

that is no longer operative, ECF #1.  *See, e.g.*, Def. Mem. at 2 n.1, 5 n.5, 10 n.12, 17, 17 n.16. However, "[i]n reviewing a motion to dismiss, the Court is limited [to] the 'facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken.'"  *Penske Media Corp. v. Shutterstock, Inc.*, F.Supp.3d, No. 1:20-CV-04583 (MKV), 2021 WL 2894809, at *3 (S.D.N.Y. 2021) (alterations in original) (quoting *Concord Assocs., L.P. v. Entm't Props. Tr.*, 817 F.3d 46, 51 n.2 (2d Cir. 2016)); *see also 2002 Lawrence R. Buchalter Alaska Tr. v. Philadelphia Fin. Life Assur. Co.*, 96 F.Supp.3d 182, 206 (S.D.N.Y. 2015) (collecting cases reflecting that, except "in rare circumstances," courts in the Second Circuit will not consider prior pleadings for 12(b)(6) purposes).  At this stage, Tapscott's supplemental materials and protestations that the Complaint does not adopt her narrative must be rejected.

## II.     THE MOTION DOES NOT "CLEARLY SHOW" THAT PLAINTIFF'S CLAIMS ARE TIME BARRED

### A.     Plaintiff had No Obligation to Plead Facts Demonstrating the Timeliness of Her Claims

"The lapse of a limitations period is an affirmative defense that a defendant must plead and prove."  *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir 2008) (citing Fed. R. Civ. P. 8(c)(1)).  Thus, "a plaintiff ordinarily need neither anticipate, nor plead facts to avoid, a defendant's affirmative defenses at the pleadings stage."  *Whiteside v. Hover-Davis*, 995 F.3d 315, 321 (2d Cir. 2021).  In turn, an affirmative defense may be raised in a pre-answer Rule 12(b)(6) motion only where "the defense appears on the face of the complaint"—dismissal on statute-of-limitations grounds at the pleading stage is appropriate only if the "complaint *clearly shows* the claim is out of time."  *Id.* (citation omitted and emphasis added); *accord S.E.C. v. Gabelli*, 653 F.3d 49, 60 (2d Cir. 2011), *rev'd on other grounds*, 568 U.S. 442 (2013).

Tapscott notes this standard but proceeds to disregard it, repeatedly suggesting that Plaintiff should be faulted for what she has not alleged. *E.g.*, Def. Mem. 11. To be sure, "certain exceptions" to statutes of limitations must be affirmatively pleaded by plaintiffs. *Whiteside*, 995 F.3d at 323 (listing willfulness in the FLSA context and equitable estoppel); *see, e.g.*, CPLR § 214-c(4) (providing, for certain toxic tort actions, that "if any such action is commenced or claim filed after the [generally applicable limitations] period . . . the plaintiff or claimant *shall be required to allege* and prove [the elements of this exception]") (emphasis added). However, no such pleading requirement has been judicially recognized or statutorily mandated with respect to the CVA.

Courts have held the same pertaining to the CVA. *See Giuffre v. Andrew*, __ F.Supp.3d __, No. 21-CV-6702 (LAK), 2022 WL 118645, at *16 (S.D.N.Y. 2022). In *Giuffre v. Andrew*, the defendant similarly argued that the plaintiff's facts did not constitute a violation of New York penal code to establish a "revival" under the CVA. But the Court rejected that argument in the defendant's Motion to Dismiss holding that "[w]hatever hurdles the CVA ultimately requires plaintiff to clear to defeat a statute of limitations defense are not relevant on this [Rule 12(b)(6)] motion." *Id.*; *accord Doe v. Baram*, No. 20 Civ. 9522 (ER), 2021 WL 4847076, at *4 (S.D.N.Y. Oct. 15, 2021) (denying motion to dismiss on limitations grounds where the complaint did not invoke the CVA but merely "alleged conduct that, if proven, could constitute a sexual offense under N.Y. Penal L. § 130"); *Oawlawolwaol v. Boy Scouts of Am.*, No. 21-CV-4714 (PKC)(JMW), 2021 WL 4355880, at *1 n.1 (E.D.N.Y. Sept. 24, 2021) (noting that, given the CVA, "[t]he Court does not decide at this stage whether Plaintiff's state-law claims alleging child sexual abuse in the 1980s are time-barred").

Thus, dismissal on statute-of-limitations grounds is not warranted here unless Plaintiff's own allegations clearly show that the CVA is inapplicable.  Defendant fails to clear this high bar as she effectively concedes by attaching extrinsic documentation to try to support her Motion.

**B.     Plaintiff's Claims Are Revived by the Child Victims Act**

Not only is Defendant Tapscott's statute of limitations defense premature at the motion-to-dismiss stage, that defense will likely fail even on summary judgment. Tapscott argues that Plaintiff's claims are not revived by the CVA because Plaintiff is currently a Colorado resident and the sexual abuse at issue here occurred in France.  Tapscott claims that the CVA applies only to New York residents who were abused within the state, citing *Holloway v. Holy See*, 537 F.Supp.3d 502 (S.D.N.Y. 2021), as well as an unpublished, nonprecedential decision of the Supreme Court for Kings County, *S.H. v. Diocese of Brooklyn*, No. 517999/2019, 2020 NY Slip Op 32648(U), 2020 WL 4730433 (N.Y. Sup. Aug. 14, 2020) (unpublished).

This restrictive reading of the CVA is entirely unsupported by the statute's text, which uses broad, inclusive language and contains no express geographic restrictions.  The CVA provides in relevant part:

> Notwithstanding any provision of law which imposes a period of limitation to the contrary . . . , *every civil claim* or cause of action brought *against any party* alleging intentional or negligent acts or omissions *by a person* for physical, psychological, or other injury or condition suffered *as a result of conduct which would constitute a sexual offense* as defined in article one hundred thirty of the penal law committed against a child less than eighteen years of age, . . . which is barred as of the effective date of this section because the applicable period of limitation has expired, . . . is hereby revived, and action thereon may be commenced not earlier than six months after, and not later than two years and six months after the effective date of this section.

CPLR § 214-g (effective Feb. 14, 2019) (emphasis added).  As an initial matter, nothing in the CVA bars claims brought by former New York residents by limiting relief to persons *currently* residing in New York.  Nor does the CVA's reference to article 130 of New York's penal law

import a geographic restriction with respect to the place of the sexual abuse.  By its plain language, the CVA references these penal law provisions to "define[]" the types of "conduct which would constitute a sexual offense."  *See, e.g.*, *Giuffre v. Dershowitz*, No. 19 Civ. 3377 (LAP), 2020 WL 2123214, at *2 (S.D.N.Y. Apr. 8, 2020) ("[T]he CVA's incorporation of the language from the Penal Code is merely a guidepost for determining which claims may be revived.").  And like the CVA, none of the provisions in New York Penal Law § 130 specify a locus for sexual abuse or impose a residency requirement for victims.  *See* N.Y. Penal L. §§ 130.00 to 130.96.[1]  There is no reason to believe that this statute, designed to aid some of the most vulnerable of Plaintiffs, would be so limited as defendant baldly asserts.

Neither *Holloway* nor *S.H.* has facts remotely similar to those here and those cases were properly dismissed because of the lack of nexus to New York, for reasons including venue arguments that are not applicable here.  In this case, all of Defendant Tapscott's wrongful conduct took place in New York which caused harm to Plaintiff Sutton, who at the time was a New York resident.  In contrast, in *Holloway* and *S.H.*, all the events relevant to the respective plaintiffs' claims took place elsewhere, and their asserted connections to New York were clearly specious. *See Holloway*, 537 F.Supp.3d at 505-06 (finding that New York was improper venue where all relevant events had occurred in Mississippi and the only connections to the forum state were (1) its enactment of the CVA, which, plaintiff argued, was "the single most significant and material event giving rise to [her] claim," (2) defendant's unrelated fundraising activities therein, and (3)

---

[1] In fact, a person may be convicted of a criminal offense in New York even where most or all the underlying conduct occurred elsewhere, so long as one of the statutory bases for exercising jurisdiction can be established.  *See* N.Y. Penal L. § 20.20 (articulating bases for territorial jurisdiction); *People v. Kassebaum*, 744 N.E.2d 694, 697 (N.Y. 2001) (recognizing that the common law principle that limited criminal jurisdiction to conduct occurring within the state "has been supplanted by State statutes broadening the territorial scope of criminal jurisdiction") (citation omitted); *People v. Lin*, 278 A.D.2d 114, 114 (N.Y. App. 2000) (determining that "New York had jurisdiction to prosecute [defendant] for the rape and aggravated sexual abuse charges, notwithstanding that the sexual assaults took place in New Jersey").

plaintiff's *subsequent* residence in the state); *S.H.*, 2020 WL 4730433, at *2, 5-6 (dismissing claims where all relevant events occurred in Florida and had previously been litigated there, and the only ostensible reason for suing in New York was that plaintiff's abuser "worked as a priest in defendant's parish [in Brooklyn] prior to being transferred to the Diocese of Orlando"). These cases are inapposite to the instant matter. Here, other than the abuse itself, which is the result of the torts alleged, every event relevant to Plaintiff's claim occurred in New York during a period when both Defendant Tapscott and Plaintiff were New York residents of the same New York City apartment.

If the legislature had intended to impose geographic limits on the CVA, it would have done so explicitly. For instance, it could have specified that the CVA applies only to "conduct which occurred in New York and would constitute a sexual offense," or "every civil claim and cause of action brought . . . by a ~~person~~ resident of this state." CPLR § 214-g (hypothetical additions underlined and deletion in strikethrough). But it chose not to, and the CVA must be applied as written. *See People v. Page*, 149 N.E.3d 905, 912 (N.Y. 2020) (courts "must read statutes as they are written") (citation omitted); *see, e.g.*, *Amorosi v. S. Colonie Indep. Cent. Sch. Dist.*, 880 N.E.2d 6, 10 (N.Y. 2007) (declining to "graft[]" omitted provision into statute or turn to legislative history where the statutory text was unambiguous); *Mei Xing Yu v. Hasaki Rest., Inc.*, 944 F.3d 395, 414 (2d Cir. 2019) (reasoning that, regardless of other considerations, a court cannot "write a . . . requirement into the [relevant statute and rule] when the text of both provisions is silent as to such a requirement").

Finally, even if the CVA imposed the limitations advanced by Tapscott, dismissal on the pleadings still would not be warranted. The Complaint does not clearly show that Marie's sexual abuse of Plaintiff was not prosecutable under New York Penal Law § 130, given that Marie's

conspiracy with Casablancas would most likely have allowed New York to exercise its territorial jurisdiction in a criminal prosecution.  *See* FAC ¶¶ 86-89; N.Y. Penal L. §§ 20.20(1)(a)(c), 20.60(1); *People v. Carvajal*, 845 N.E.2d 1225, 1231 (N.Y. 2005); *see also Giuffre v. Andrew*, 2022 WL 118645, at *16 (concluding that no showing of a prosecutable violation is necessary at the pleading stage); *Baram*, 2021 WL 4847076, at *4 (same).  And as explained more fully in Part II.C, *infra*, Plaintiff was a New York resident at the time her claims against Tapscott accrued and would thus be a beneficiary of the CVA even if the legislature had included a residency requirement.

### C.      The Borrowing Statute Does Not Apply

Tapscott also argues that Plaintiff's claims should be dismissed because they are time-barred by New York's borrowing statute.  Under that statute, claims that accrue outside New York are sometimes subject to a shorter foreign limitations period; however, the statute is inapplicable where the plaintiff was a New York resident at the time of accrual.  CPLR § 202; *Global Fin. Corp. v. Triarc Corp.*, 715 N.E.2d 482, 480 (N.Y. 1999).  The Complaint supports the conclusion that Plaintiff was a New York resident at the time of the conduct and injury at issue.  Homeless in California before being put up by Elite in apartments in New York and on only a short-term visa in Paris, all reasonable inferences from the Complaint show that Plaintiff was a New York resident at the time of the accrual of the claims.

For tort claims, New York applies the general rule that a claim accrues at the time and place of injury.  *Global Fin. Corp*, 715 N.E.2d at 485.  Here, Plaintiff's claims against Tapscott accrued in spring of 1986 in New York when she was advised by Tapscott that working for Marie would further her career and was sent off from New York under that misrepresentation.  As pleaded, Tapscott is alleged to have both fraudulently and negligently subjected Plaintiff to a risk of harm, all of which occurring in New York.  *See, e.g.*, *Ackerman v. Price Waterhouse*, 644 N.E.2d 1009,

1013 (N.Y. 1994) (holding that malpractice claim against accountant accrued at the time bad advice was received by client, not the later date when an IRS deficiency notice was issued).

Nonetheless, even if Plaintiff's claims did not accrue until Marie's abuse began in 1986 following her arrival in France, as Defendant Tapscott argues, the result is the same as she was still a resident of New York and in Paris only on a short-term visa. Although not her burden, Plaintiff's Complaint refutes the claim she was a non-resident.

"[T]he determination of whether a plaintiff is a New York resident, for purposes of CPLR 202, turns on whether [s]he has a significant connection with some locality in the State as the result of living there for some length of time during the course of a year." *Antone v. Gen. Motors Corp., Buick Motor Div.*, 473 N.E.2d 742, 746 (N.Y. 1984). Residence is "a more flexible concept" than domicile. *Allen v. Handszer*, 148 Misc.2d 334, 341 (N.Y. Sup. Ct. 1990). "In order to consider a place as one's residence, the person 'must stay there for some time and have the bona fide intent to retain the place as a residence for some length of time and with some degree of permanency.'" *Id.* (citation omitted). "Residence requires more stability than a brief sojourn for business, social or recreational activities." *Id.*

Tapscott's argument ignores several factual allegations in the Amended Complaint.[2] Plaintiff "moved" to New York in January 1986 and "was excited to start a new life" there. FAC ¶¶ 7-8. She lived and worked continuously in New York for at least "a few months," until she went to Paris "on a short-term visa, likely a tourist visa," in "the spring of 1986." FAC ¶ 10, 52,

---

[2] Instead, Defendant relies on allegations from the original Complaint, which is no longer operative. *Compare* ECF No. 1 ¶ 10, *with* ECF No. 24 ¶ 10. Although those allegations do not alter the analysis nor are contrary to the First Amended Complaint, they should not be considered for purposes of this motion. *See, e.g.*, *Phillips v. City of Middletown*, No. 17-CV-5307(CS), 2018 WL 4572971, at *4 (S.D.N.Y. Sept. 4, 2018) ("[O]nce an amended pleading is filed, a court may not import information that was contained in the prior pleading but omitted from the amended pleading.") (citation omitted); *see also Tran v. Alphonse Hotel Corp.*, 281 F.3d 23, 32 (2d Cir. 2002) ("A statement in a withdrawn complaint that is superseded by an amended complaint without the statement is no longer a conclusive judicial admission."), *overruled on other grounds by Slayton v. Am. Exp. Co.*, 460 F.3d 215 (2d Cir. 2006).

55. Even then, she "fully intended to later return to live in New York and continue her career as a model." FAC ¶ 55. Marie's abuse of Plaintiff began "[s]hortly after" her arrival, no later than June 1986 when Tapscott documented the abuse in her memo to Casablancas. FAC ¶¶ 4, 41, 57-60.

Taken as true and viewed in the light most favorable to Plaintiff, these facts fully support a finding that Plaintiff was still a New York resident when she was assaulted by Marie in Paris following when, according to Tapscott, her claims against Tapscott accrued. Plaintiff, previously homeless before arrival in New York and securing housing there, had one residence at the time of the assaults—in New York—and the intent to return there to continue her career after a brief sojourn in Paris. *See* FAC, ¶¶ 55, 60, 62; *cf. Eaton v. Keyser*, 53 A.D.3d 1029, 1030-31 (N.Y. App. 2008) (upholding denial of summary judgment on the issue of plaintiff's residency where claim accrued in Tennessee not long after plaintiff had left New York with the intent to return, though plaintiff ultimately remained in Tennessee for two years thereafter).

Moreover, Defendant cites no authority suggesting that residing for a continuous span of a few months cannot, as a matter of law, constitute "some length of time during the course of a year." *Antone*, 64 N.Y.2d at 30. While the Complaint does not set forth an exact timeline, Plaintiff should not be faulted for this, as she had no obligation to plead facts in anticipation of affirmative defenses that might be raised by Tapscott, especially where Tapscott failed to raise this issue in her pre-motion letter. *See, e.g., Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A.*, 14 F.Supp.3d 191, 210 (S.D.N.Y. 2014) ("Mosdos 'need not allege a specific . . . date to survive a motion to dismiss.' . . . The Court thus declines to grant Citizens' Motion on statute-of-limitations grounds at this time.") (first alteration in original and citation omitted); *Fargas v. Cincinnati Mach., LLC*, 986 F.Supp.2d

420, 427 (S.D.N.Y. 2013) (denying defendant's motion to dismiss on statute of limitations grounds because relevant dates were not pleaded by Plaintiff nor subject to judicial notice).

Indeed, the question of residency is a fact-intensive inquiry.  *See, e.g., Eaton*, 53 A.D.3d at 1030; *Adams v. Crystal City Marriott Hotel*, No. 02 Civ. 10258 PKL, 2004 WL 744489, at *1 (S.D.N.Y. Apr. 6, 2004) (with respect to New York's borrowing statute, "plaintiff's residence presents a [question of] material fact").  Where, as here, this issue may be determinative of an action's timeliness and is not foreclosed as a matter of law by the complaint or other admissions, courts have generally declined to resolve the issue prior to summary judgment or trial.  *See, e.g., Adams*, 2004 WL 744489, at *5; *see also Fargas*, 986 F.Supp.2d at 427 (declining to resolve timeliness issue at pleadings stage); *Mosdos Chofetz Chaim*, 14 F.Supp.3d at 210 (same); *cf. Holloway v. Holy See*, 537 F.Supp.3d at 504, 507 n.4 (granting motion to dismiss where plaintiff undisputedly had never lived in New York and none of the abuse occurred there); *Smith v. Soros*, No. 02 Civ. 4229 JGK, 2003 WL 22097990, at *5 (S.D.N.Y. Sept. 5, 2003) (granting motion to dismiss where plaintiff "d[id] not contend that her residence was in New York at the time of the events" and, "by her own admission, had a residence in Washington, D.C. at the time the alleged fraud occurred").

For these reasons, the borrowing statute does not apply.  To the extent Tapscott has a bona fide dispute with Plaintiff on this issue, it should be resolved after discovery on the issue, either on summary judgment motions or at trial.

## III.   PLAINTIFF'S CLAIMS ARE SUFFICIENTLY PLEADED

### A.   Plaintiff has Alleged Sufficient Facts Plausibly To Infer the Existence of a Duty Owed By Tapscott, as Necessary to Support Plaintiff's Negligence Claim.

Tapscott argues that Plaintiff fails to state a viable negligence claim because Tapscott owed no duty to Plaintiff. In New York, the threshold question in any negligence action is whether the

defendant owed a legally recognized duty of care to plaintiff, which is a question of law.  *Davis v. S. Nassau Comms. Hosp.*, 46 N.E.3d 614, 618 (N.Y. 2015).  Where the tortfeasor is a third party, a "critical consideration in determining whether a duty exists is whether 'the defendant's relationship with either the tortfeasor or the plaintiff places the defendant in the best position to protect against the risk of harm.'"  *Id.*  (citation omitted).

While Defendant Tapscott focuses on the standards that govern the recognition or expansion of a duty, she ignores that courts have already recognized a *heightened* duty of care that applies here: "A person not a parent who undertakes a duty to care for or supervise a child is required to use reasonable care to protect the child from harm, particularly since the standard of care owed a child is higher than that required for an adult."  *Mary A. "ZZ" v. Blasen*, 284 A.D.2d 773, 775 (N.Y. App. 2001); *accord Lisa I. v. Manikas*, 188 A.D.3d 1392, 1394 (N.Y. App. 2020) (acknowledging applicability of duty to third party's sexual abuse of teenage plaintiff in defendants' care where defendants had knowledge of his prior acts of sexual misconduct); *cf. Stephanie L. v. House of Good Shepherd*, 186 A.D.3d 1009, 1014 (N.Y. App. 2020) (recognizing organization's duty to disclose foster child's history of sexually inappropriate behavior to family with whom child was being placed).  Plaintiff included an identical quotation in her response to Tapscott's letter motion to dismiss, yet Tapscott did not even acknowledge—let alone attempt to dispute the applicability or scope of—this duty in her motion.  *Compare* Letter Response, ECF #17, at 2, *with* Def. Mem. 19-22;

Tapscott argues that the Complaint does not support a conclusion that Ms. Tapscott was "Plaintiff's 'employer', 'caretaker' 'housemother' or 'housing provider.'" Def. Mem. 22.  However, in doing she relies on her own extrinsic narrative and ignores several factual allegations in the complaint.  As previously noted, this is improper at this stage—Plaintiff does explicitly so

allege concerning Tapscott's roles at paragraph 14 of the Amended Complaint. ("Tapscott's duties included taking care of the young models, including Plaintiff. Ms. Tapscott oversaw the new models housing in model apartments, transportation to jobs, and any other basic needs of the young women adjusting to their new life in New York City. For Plaintiff, Ms. Tapscott was responsible for not only housing, but also for providing her food while she was housed in Ms. Tapscott's apartment. She was in effect a housemother for the child models, and in particular for Plaintiff.") Moreover, as detailed below with respect to fiduciary duty, the complaint plausibly alleges that Tapscott undertook a duty to care for Plaintiff, a minor who had been relocated to New York without parental consent. Having assumed this caretaker role and moved Plaintiff into her own apartment, Tapscott breached her duty of care by then sending Plaintiff to leave her supervision and move into the apartment of a known sex offender, giving no warning of the abuse likely to follow. Accordingly, Tapscott has failed to present a valid basis for dismissal of Plaintiff's negligence claim.

### B.   Plaintiff's Fraud Claim Satisfies the Heightened Pleading Requirements

Plaintiff's fraud claim satisfies requirements for both material misrepresentations as well as failing to disclose material information.

#### 1.   Tapscott's Material Misrepresentations About the Purpose of Plaintiff Being Sent to Marie's Private Home

"The elements of a cause of action for fraud require a material misrepresentation [or omission] of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages." *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 910 N.E.2d 976, 979 (N.Y. 2009). "*Iqbal* requires that the complaint assert facts that plausibly support the inference of fraud. It does not require that all other conceivable possibilities be excluded." *Cohen v. S.A.C.*

*Trading Corp.*, 711 F.3d 353, 360 (2d Cir. 2013) (reversing dismissal of common law fraud and other fraud-based claims).

Additionally, a fraud claim must satisfy the heightened pleading requirements of Rule 9(b), which requires that "a party must state with particularity the circumstances constituting fraud" but allows "intent, knowledge, and other conditions of a person's mind [to] be alleged generally." Fed. R. Civ. P. 9(b).

"[T]he complaint must '(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent.'" *Id.* (citation omitted). Tapscott does not appear to dispute that Plaintiff has satisfied this requirement. *See* Def. Mem. 14-19. Nor could she. The complaint alleges that during the spring of 1986 in New York City, less than a week after the meeting in Casablancas' office, Tapscott informed Plaintiff that she would be transferring to Paris. *See* FAC ¶¶ 8, 10, 52-53. During this conversation, Tapscott both (1) affirmatively misrepresented that Plaintiff "was being sent to Paris for the purpose of furthering her career" and (2) "failed to explain Marie's true motives or to warn Plaintiff of Marie's penchant for sexually assaulting underage models." FAC ¶¶ 3, 56; *accord* FAC ¶¶ 53, 69. And the complaint explains why both were fraudulent—rather than summoning Plaintiff to Paris for paid modeling work or helping advance her career, as Tapscott had suggested, Marie summoned her so he could repeatedly rape her in his apartment and traffic her to other wealthy men across Europe. FAC ¶ 69; *see also* FAC ¶¶ 3-4, 10, 56, 60-62.

In the guise of disputing the sufficiency of Plaintiff's pleading of Tapscott's "mental state," *Loreley*, 797 F.3d at 171, Tapscott asserts more extrinsic factual disputes this time about her intent. She claims she did not know Marie's true intentions regarding Plaintiff or his history of abusing

17

other models.  She disputes that she intended to deceive Plaintiff.  But these factual disputes are appropriate for summary judgment or trial, not a motion to dismiss.

Mental states "may be pleaded 'generally,' and Plaintiffs need only allege facts 'that give rise to a strong inference of fraudulent intent.'"  *Id.* (citation omitted).  That strong inference may be established "either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."  *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290-91 (2d Cir. 2006) (citation omitted).  This second requirement of Rule 9(b) is "less rigid" than the first.  *Ashcroft v. Iqbal*, 556 U.S. 662, 686-87 (2009) (explaining that, as compared to Rule 9(b)'s particularity pleading of fraud circumstances, the "conditions of a person's mind [which] may be alleged generally" are simply subject to "the less rigid—though still operative—strictures of [plausibility pleading under] Rule 8").

Here, as summarized on pages 3-5, *supra*, Plaintiff has pleaded "strong circumstantial evidence" of Tapscott's knowledge and complicity in Marie's abuse, including: Tapscott's documentation of the abuse in June of 1986; Marie's widespread reputation as a sexual predator both within and outside of Elite at the time of Plaintiff's transfer; Tapscott's continued loyalty to Elite, Marie, and Casablancas for years thereafter as the abuse continued; and Tapscott's own statements reflecting that she failed to report or put an end to the abuse, despite being able to "do[] more at the time."  FAC ¶¶ 37-41, 63-66.  According to Tapscott, evidence clearly showing her knowledge of Marie's sexual abuse shortly after Plaintiff's transfer somehow "contradict[s]" the suggestion that she had prior knowledge.  *See* Def. Mem. 16.  To the contrary, while this evidence may not be *conclusive* proof of Tapscott's prior knowledge, it is circumstantial evidence that certainly supports the inference that Tapscott was aware of the risk posed by Marie when sending

Plaintiff to live in his apartment less than a few months earlier, especially when coupled with the fact that she remained silent and complicit in the abuse for years thereafter. *See, e.g.*, *PC-41 Doe*, 2021 WL 4310891, at \*11 (concluding that plaintiff had "plausibly alleged that [defendant] knew of [the abuser]'s propensities and/or acts" where defendant's knowledge was alleged "on information and belief" and one of defendant's colleagues allegedly received a prior report of abuse and may have shared it with defendant). Viewed in the light most favorable to Plaintiff, this "circumstantial evidence of [Tapscott's] conscious misbehavior" establishes both a strong inference of her fraudulent intent and at least a plausible inference of her prior knowledge.

### 2. Tapscott's "Housemother" Relationship Imposed on Tapscott a Duty to Disclose That Marie Was a Sexual Predator Before Sending 17-Year-Old Plaintiff to Live with Him

Tapscott also argues that even if she knew that Marie was likely to assault Plaintiff, she had no duty to disclose that fact because there was no fiduciary relationship between her and Plaintiff. As a threshold matter, Tapscott fails to acknowledge that while Plaintiff alleges fraud based on both affirmative misstatements and omissions, a duty of disclosure is required only for the latter. *See Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 179 (2011); *Basquiat v. Sakura Int'l*, No. 04 Civ. 1369(GEL), 2005 WL 1639413, at \*6 n.5 (S.D.N.Y. July 5, 2005). Thus, Plaintiff's claim based on Tapscott's affirmative misrepresentation (that the Paris transfer was for the purpose of furthering her career) cannot be dismissed on this basis.

"Under New York law, a fiduciary relationship includes 'both technical fiduciary relations and those informal relations which exist whenever one [person] trusts in, and relies upon, another.'" *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 45 (2d Cir. 1991) (alteration in original) (quoting *Penato v. George*, 52 A.D.2d 939, 942 (N.Y. App. 1976)). "Broadly stated, a fiduciary relationship is one founded upon trust or confidence reposed by one person in the

integrity and fidelity of another.  It is said that the relationship exists in all cases in which influence has been acquired and abused, in which confidence has been reposed and betrayed."  *Penato*, 52 A.D.2d at 942.  Consequently, Tapscott's categorical claim that the relationship between a person working as a model and a modeling agency "is not a fiduciary relationship" cannot be true, nor is it supported by the case that she cites.  Def. Mem. 18; *see Raske v. Next Mgmt., LLC*, 40 Misc.3d 1240(A) (N.Y. Sup. Ct. 2013) ("Absent extraordinary circumstances—and no such circumstances are alleged here—parties dealing at arms length in a commercial transaction lack the requisite level of trust or confidence between them necessary to give rise to a fiduciary obligation.").  Moreover, *Raske* and the other modeling cases it cites all appear to involve pay disputes in the context of arms-length relationships.  *Id.* (noting that the complaint "asserts that the modeling agencies breach their fiduciary duty to the models by failing to pay them" and "describes a typical arms length commercial relationship").

In stark contrast here, Plaintiff alleges that Tapscott not only played a significant role in her modeling career (as the executive in charge of new models), but also was primarily responsible for her wellbeing.  Given that Plaintiff was still a minor, had been cut off from her parents, and had almost no money or resources other than what Elite gave her, Plaintiff was completely reliant on Tapscott who served as a housemother to Plaintiff responsible for the underage model's housing, transportation, other basic needs, and, at times, food.  These facts are more than sufficient to give rise to fiduciary relationship requiring Tapscott to disclose that Marie was a sexual predator. *See Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150-51 (2d Cir. 1993) (under New York law, "a fiduciary relationship embraces. informal relationships where it can be readily seen that one party reasonably trusted another," such as "priest and parishioner, . . . and close friends or family members"); *see, e.g.*, *Penato*, 52 A.D.2d at 904 (concluding, where the complaint "implie[d] a

situation wherein friends were persuaded" to start a new business together, that "plaintiff ha[d] certainly set forth sufficient factual allegations to suggest the existence of a fiduciary relationship"); *Holmes v. Lorch*, 329 F.Supp.2d 516, 526-27 (S.D.N.Y. 2004) (concluding that reasonable jury could find, under New York law, fiduciary relationship between youth basketball coach and minor player who was sexually assaulted).

### 3.     Tapscott's Knowledge that Plaintiff was Operating on a Mistaken Perception Imposed on Tapscott a Duty to Disclose That Marie Was a Sexual Predator

At any rate, even "[i]n the absence of a fiduciary relationship, a duty to disclose may arise if: (1) one party makes a partial or ambiguous statement that requires additional disclosure to avoid misleading the other party; or (2) 'one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge.'" *Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*, 68 F.3d 1478, 1484 (2d Cir. 1995) (citations omitted). "In either case, a disclosure duty ripens only when it becomes apparent to the non-disclosing party that another party is operating under a mistaken perception of a material fact." *Id.* Here, without disclosure of Marie's proclivities and the likelihood that he would abuse Plaintiff, Tapscott's affirmative statements to Plaintiff about the transfer (i.e., that she had been "chosen" by Marie and that it would help her career) misled Plaintiff to believe that this was a "very good sign" for her career. FAC ¶ 53. Plaintiff's mistaken belief was also apparent to Tapscott, given that it resulted from Tapscott's own statements and Plaintiff willingly agreed to the transfer. Because Plaintiff clearly lacked Tapscott's same access to the information based on their respective positions at Elite and within the industry, Tapscott's superior knowledge of Marie's proclivities also gave rise to a duty of disclosure. Thus, whether by virtue of Tapscott's fiduciary relationship with Plaintiff, misleading statements, or superior knowledge, it is certainly plausible

that Tapscott had a duty to disclose Marie's history as a sexual predator and his foreseeable abuse of Plaintiff.

For these reasons, Plaintiff has stated a viable fraud claim, and Tapscott is not entitled to dismissal.

### C.    Intentional Infliction of Emotional Distress is Properly Pleaded

With respect to this claim, Plaintiff alleges that Tapscott had complete disregard for the substantial probability that Marie would sexually assault Plaintiff while arranging for her travel to stay in the home of known sex offender Gerald Marie.  FAC ¶¶ 81-82.  Tapscott argues that these allegations are conclusory and unsupported, and again asserts extrinsic facts to claim that "[a]t most, [she] informed Plaintiff of a decision made by Casablancas and Marie" and "had no knowledge of such [mis]conduct by Marie in the past."  Def. Mem. 25.  As previously addressed, Plaintiff has pleaded facts from which Tapscott's knowledge of Marie's proclivities and the accompanying risk to Plaintiff can be plausibly inferred.  *E.g.*, FAC ¶¶ 37-41, 63-66.  At this stage, that fact must be accepted as true for purposes of this motion.  Likewise, in claiming that the Complaint fails to plausibly suggest Tapscott's involvement in the decision to send Plaintiff to live with Marie, Tapscott disregards explicit allegations of her involvement, FAC ¶¶ 3, 54; the fact that she had previously alluded to transferring Plaintiff to Paris, FAC ¶ 52; and other allegations pertaining to her role as a high-level executive in charge of all new models with considerable oversight over Plaintiff's career, *e.g.*, FAC ¶¶ 14, 50-51.  While Tapscott is free to dispute these facts in an answer or motion for summary judgment, she may not do so in a motion to dismiss pursuant to Rule 12(b)(6).  Accordingly, as with Plaintiff's other claims, dismissal is not warranted.

### CONCLUSION

For the forgoing reasons, Plaintiff asks this Court to deny Defendant's Motion.

DATED: February 9, 2022.

Respectfully submitted,

HUTCHINSON, BLACK, AND COOK, LLC

By */s/ John Clune*
    John Clune
    Daniel D Williams
    HUTCHINSON, BLACK, AND COOK, LLC
    921 Walnut Street, Suite 200
    Boulder, Colorado 80302
    Telephone: 303-442-6514
    clune@hbcbhoulder.com
    williams@hbcboulder.com

By */s/ Debra Greenberger*
    Debra Greenberger
    EMERY CELLI BRINCKERHOFF ABADY
    WARD & MAAZEL LLP
    600 Fifth Avenue at Rockefeller Center
    10th Floor
    New York, New York 10020
    Telephone: (212) 763-5000
    dgreenberger@ecbawm.com

    *Attorneys for Plaintiff*