UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CARRÉ SUTTON,

Plaintiff,

v.

GÉRALD MARIE, AKA GÉRALD MARIE
CASTELLAC, an individual, and
TRUDI TAPSCOTT, an individual

Defendants.

Case No.  1:21-cv-06787 (MKV)

**REPLY MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS**

**PASHMAN STEIN WALDER HAYDEN, P.C.**
2900 Westchester Avenue, Suite 204
Purchase, New York 10577
(914) 612-4092
*Attorneys for the Defendant,*
*Trudi Tapscott*

On the Brief:

Joseph A. D'Avanzo, Esq.

## <u>TABLE OF CONTENTS</u>

ARGUMENT ........................................................................................................................... 1

POINT I ................................................................................................................................ 1

THE PLAINTIFF'S ALLEGATIONS ESTABLISH

THAT THE CLAIMS ARE TIME BARRED ...................................................................... 1

    A.    New York's CVA Does Not Apply ......................................................................... 2

    B.    New York's Borrowing Statute Applies And Otherwise Bars Plaintiff's Claims .... 7

POINT II .............................................................................................................................. 12

THE CLAIMS AS PLED ARE NOT PLAUSIBLE ON THEIR FACE ............................. 12

CONCLUSION ..................................................................................................................... 16

# <u>TABLE OF AUTHORITIES</u>

Page(s)

Cases

*Ackerman v. Price Waterhouse*,
  644 N.E.2d 1009 (N.Y. 1994) ........................................................................ 7

*Afanassieva v. Page Transportation, Inc.*,
  2021 WL 4458686 (N.D.N.Y. Sept. 29, 2021) ................................... 9, 10

*Allen v. Handszer*,
  148 Misc.2d 334, 560 N.Y.S.2d 593 (N.Y.Sup.Ct.1990) ........................ 9

*Antone v. Gen. Motors Corp., Buick Motor Div.*,
  64 N.Y.2d 20 (1984) ................................................................................... 8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................. 12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................. 12

*Caputo v. Pfizer, Inc.*,
  267 F.3d 181 (2d Cir. 2001) ..................................................................... 16

*Colliton v. Cravath, Swaine & Moore LLP*,
  2008 WL 4386764 (S.D.N.Y. Sept. 24, 2008) ........................................ 10

*Doe v. Baram*,
  2021 WL 4847076 (S.D.N.Y. Oct. 15, 2021) ....................................... 2, 3

*Eaton v. Keyer*,
  53 A.D.3d 1029 (3d Dept 2008) ................................................................. 8

*Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*,
  375 F.3d 168 (2d Cir. 2004) ..................................................................... 16

*Giuffre v. Andrew*,
  2022 WL 118645 (S.D.N.Y. Jan. 12, 2022) .............................................. 2

*Giuffre v. Dershowitz*,
  2020 WL 2123214 (S.D.N.Y. Apr. 8, 2020)............................................................ 5

*Global Fin. Corp. v Triarc Corp.*,
  93 N.Y.2d 525 (1999) ............................................................................................ 7

*Goshen v. Mut. Life Ins. Co. of N.Y.*,
  262 A.D.2d 229 [1st Dept. 2001].......................................................................... 4, 6

*Holloway v. Holy See*,
  2021 WL 1791456 ............................................................................................... 4, 11

*Honickman v. BLOM Bank SAL,*
  *6 F.4th 487* (2d Cir. 2021) .................................................................................... 12

*Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter,*
  *Inc.*, 32 F.2d 195 (2d Cir. 1929) .......................................................................... 10

*Martin v. Julius Dierck Equipment Co.*,
  43 N.Y.2d 583 (1978)............................................................................................ 7

*Martinez v. Semicevic*,
  178 A.D.2d 228 (1st Dept 1991)............................................................................ 9

*Neu v. St. John's Episcopal Hosp.*,
  27 A.D.3d 538 (2d Dept 2006) ............................................................................. 9

*Oawlawolwaol v. Boy Scouts of America*,
  2021 WL 4344880 (E.D.N.Y. Sept. 24, 2021) .................................................... 3

*People v. Carvajal*,
  6 N.Y.3d 305 (2005) ............................................................................................. 6

*People v. McLaughlin*,
  80 N.Y.2d 466 (1992) ....................................................................................... 4, 5, 6

*S.H. v. Diocese of Brooklyn*,
  2020 WL 4730433 ............................................................................................... 4, 11

*United States v. McKeon*,
  738 F.2d 26 (2d Cir. 1984)................................................................................... 10

**Statutes:**

18 U.S.C. §§ 1591 ..................................................................................................... 2, 3

N.Y. Penal L. § 130 ...................................................................................................... 3

**Rules:**

CPLR § 202 .......................................................................................................... passim

CPLR §§ 213 (8), 241 (5) & 215 (3) ............................................................................. 1

FRCP Rule 8 .................................................................................................................. 2

FRCP Rule 12 (b) ........................................................................................................... 1

FRCP Rule 12 (b) (6) ................................................................................................ 9, 16

The Defendant, Trudi Tapscott, submits this memorandum of law in reply to Plaintiff's Memorandum of Law in Opposition to Defendant Tapscott's Motion to Dismiss [ECF No. 28] and in further support of Ms. Tapscott's motion to dismiss this action pursuant to FRCP Rule 12 (b) 6 on the ground that Plaintiff has failed to state a claim upon which relief can be granted.

## ARGUMENT

### POINT I
### THE PLAINTIFF'S ALLEGATIONS ESTABLISH
### THAT THE CLAIMS ARE TIME BARRED

The Plaintiff argues that Defendant fails to clearly show that the Plaintiff's claims are time barred, that the CVA does apply to revive her claims despite the alleged rape and sexual assault occurring in Paris, France (instead of New York), and that New York's "Borrowing Statute" (CPLR § 202) does not apply.  *See*, Plaintiff's Memorandum of Law in Opposition to Defendant Tapscott's Motion to Dismiss [ECF No. 28] (hereinafter "Pltf's. Mem. of Law") at pp. 6-14.

At the outset, it should be noted that if the CVA does not apply, the Plaintiff has failed to address (and, thus, has conceded) that Plaintiff's claims are time barred under the otherwise applicable New York statutes of limitations (CPLR §§ 213 (8), 241 (5) & 215 (3)).  *See*, Defendant's Memorandum of Law In Support of Motion to Dismiss [ECF No. 25-4] (hereinafter "Deft's. Mem. of Law"), Point II.B at p. 11.  The Plaintiff further concedes that if CPLR § 202 applies, the Plaintiff's claims, which accrued in France, are time barred under French law *even if* the CVA applied to this case.  *See*, *id.*, Point II.C at pp. 12-14.

Ms. Tapscott has clearly established that the Plaintiff's claims are time barred based on the allegations in Plaintiff's First Amended Complaint [ECF No. 23] (hereinafter "FAC").  The FAC contains affirmative allegations that the rape of and sexual assaults to Plaintiff occurred outside of

New York and that Plaintiff was not a resident of New York at the time these horrific events occurred.  As such, the CVA does not apply to this action and, even if it did, the application of CPLR § 202 bars this action.

A.      **New York's CVA Does Not Apply**

The Plaintiff argues that Defendant's motion is premature, and that Plaintiff did not have an obligation to plead facts that conclusively establish the applicability of the CVA's revival provisions.  *See*, Pltf's. Mem. of Law, Point II.A at p. 7.

Ms. Tapscott did not claim, however, that Plaintiff failed to allege sufficient facts to come within New York's CVA revival provisions.  Rather, Defendant showed that under case law applying this revival statute, the CVA does not apply to sexual assaults that occur outside of New York and that there is no dispute in this case that those sexual assaults occurred in Paris, France. *See*, Deft's. Mem. of Law, Point II.A at pp. 9-11.

The cases cited by the Plaintiff fail to address the issues raised in Ms. Tapscott's motion. For instance, *Giuffre v. Andrew*, 2022 WL 118645 (S.D.N.Y. Jan. 12, 2022) (the Jeffrey Epstein – Prince Andrew sex trafficking case), the defendant argued, among other things, that the plaintiff was obligated to plead specific facts demonstrating a violation of the New York Penal Law. *Id*. at *16.  The trial court disagreed and held that FRCP Rule 8 imposes no such requirement.  *Id*.  It should be noted that the plaintiff in that case alleged that the offensive touching occurred at Epstein's mansion on the Upper East Side of Manhattan, among other places.  *Id*. at *3.

In *Doe v. Baram*, 2021 WL 4847076 (S.D.N.Y. Oct. 15, 2021), the plaintiff asserted claims of alleged violations of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. §§ 1591, et seq., as well as state laws.  *Id.* at *1. The plaintiff claimed she was lured by

defendant to New York where she was raped and sexually battered by a third party. The *pro se* defendant sent two letters to the court, which the trial court construed as a motion to dismiss and for leave to assert counterclaims and strike certain allegations of the complaint.  *Id*. The court described defendant's statute of limitations argument as follows:

> [Defendant] has not yet answered the Complaint, and his letter does not demonstrate how the facts in Doe's Complaint prove that the statute of limitations has passed. [Defendant] does not reference any dates or any applicable statute of limitations. Rather, [defendant] simply states that the statute of limitations on the TVPRA claim has expired and "nothing [he] did warranted equitable tolling."

*Id*. at *3.  In opposition, the plaintiff alleged her claims were revived by the CVA and the court found that the plaintiff did allege that she was a minor at the time of the sexual assaults, had alleged physical and psychological harm and, significantly, that her allegations of the alleged conduct, if proven, "could constitute a sexual offense under N.Y. Penal L. § 130, including §§ 130.20 (sexual misconduct), 130.25 (third degree rape), 130.35 (first degree rape), 130.40 (third degree criminal sexual act), 130.50 (first degree criminal sexual act), 130.52 (forcible touching), 130.55 (third degree sexual abuse), 130.60 (second degree sexual abuse), 130.65 (first degree sexual abuse), 130.90 (facilitating a sex offense with a controlled substance), and 130.91 (sexually motivated felony, with sex trafficking of a child as the specified offense)." *Id*. at 4.

The *Oawlawolwaol v. Boy Scouts of America*, 2021 WL 4344880 (E.D.N.Y. Sept. 24, 2021) case cited by Plaintiff was an *in forma pauperis* application by a *pro se* plaintiff, not a motion to dismiss.  *Id*. at *1.  The court noted in a footnote that the letter constituting plaintiff's complaint was received by the Pro Se Office five days after the cut-off for filing CVA actions within the revival window opened by the statute.  *Id*. at n.1.  The trial court simply declined to decide whether the plaintiff's claims were time barred at that stage where the court had directed

plaintiff to file a new complaint complying with the court's directions on what allegations it needed to contain. *Id*. Again, the alleged sexual abuse occurred in New York. *Id*. at *1.

The Plaintiff argues that the CVA's reference to Article 130 of the New York Penal Law does not impose a "geographical restriction with respect to the place of the sexual abuse." *See*, Pltf's. Mem. of Law, Point II.B. at pp. 8-9. Ms. Tapscott has cited to two decisions applying the CVA and stating that the CVA does not revive claims where the alleged abuse occurred outside of New York. *See*, Deft's. Mem. of Law, Point II.A at pp. 9-10 (citing *Holloway v. Holy See*, 2021 WL 1791456 at *2, n. 2, 19-cv-2195 (May 5, 2021) and *S.H. v. Diocese of Brooklyn*, 2020 WL 4730433 at *3, Index No. 517999/2019 (N.Y. Sup. Ct., Aug. 14, 2020)). As the court in *S.H. v. Diocese of Brooklyn*, pointed out, the requirement that one of the enumerated criminal offenses take place in New York is not only consistent with the definition of an "offense" under New York Law (*id*. at *3) and the New York's interpretation of legislative construction (*id*. ("'[n]o legislation is presumed to be intended to operate outside the territorial jurisdiction of the state enacting it' (*Goshen v. Mut. Life Ins. Co. of N.Y.*, 262 A.D.2d 229, 230 [1st Dept. 2001], *aff'd*, 98 N.Y.2d 314 [2002]")) and the jurisdictional limitation for the enforcement of its criminal laws (*id*. at *3 (citing *People v. McLaughlin*, 80 N.Y.2d 466, 471 (1992)), but also fulfills the legislative purpose of the CVA (*id*. at *3-4) and serves important public policies of New York, including the "state's long-standing aversion to forum shopping" (*id*. at *4).

The Plaintiff has cited to no decision addressing the issue of whether a sexual offense committed outside of New York permits the victim of such offense to revive her otherwise time barred claims. *See*, Pltf's. Mem. of Law, Point II.B at pp. 8-11. The Plaintiff attempts to construct an argument that the abuser, Gérald Marie, could possibly be prosecuted for one of the offenses

enumerated in the CVA, using an extra-territorial jurisdiction analysis. *Id*. The Plaintiff cites *Giuffre v. Dershowitz*, 2020 WL 2123214 (S.D.N.Y. Apr. 8, 2020) for the proposition that the CVA's reference to particular offenses under New York's Penal Law are "merely guideposts" for determining which claims are revived (*see*, Pltf's. Mem. of Law, Point II.B at p. 9). The quote cited by Plaintiff is taken completely out of context. In *Giuffre v. Dershowitz*, Professor Deshowitz presented a litany of arguments in his motion to dismiss, including that the CVA was unconstitutional under the Due Process Clause of the Fifth Amendment due to vagueness (2020 WL 2123214 at *2). He argued that the "lack of consent" element of the crimes set forth in New York Penal Law Article 130 was vague and failed to give notice as to what circumstances constituted a crime, permitting arbitrary enforcement of these laws (*id*.). In the course of rejecting this argument, the court made the quote referenced by Plaintiff in her brief.  After pointing out that a lack of consent was not required for plaintiff to prove sexual battery, the court stated:

> the CVA itself does not provide for "proof" of anything because it in no way regulates conduct. Instead, the CVA is a means to an end. As discussed above, its claim-revival mechanism allows Giuffre to raise a claim for civil sexual battery--which itself does not require any proof of lack of consent…—-in the face of a potential limitations defense because the conduct alleged by Giuffre would amount to a sexual offense under the New York Penal Code. Thus, the definition of lack of consent that Dershowitz finds problematic cannot be wielded against him at all, at least not in any substantive sense. Instead, the CVA's incorporation of the language from the Penal Code is merely a guidepost for determining which claims may be revived. It is not, as Dershowitz suggests, a guidepost for how to prove those claims once they have been resurrected from the dead. Thus, the Court sees no constitutional issue with the type of notice that the CVA provides.

*Id*. at *2.  Nowhere in the cited decision does the court address whether sexual assaults outside of New York qualify for the application of the CVA to revive time barred claims.

The Plaintiff attempts to turn New York law on its head, arguing that "[i]f the legislature had intended to impose geographic limits on the CVA, it would have done so explicitly." *See*, Pltf's. Mem. of Law, Point II.B at p. 10. As noted previously, under New York law "[n]o legislation is presumed to be intended to operate outside the territorial jurisdiction of the state enacting it" (*Goshen v. Mut. Life Ins. Co. of N.Y.*, 262 A.D.2d 229, 230 [1st Dept. 2001], *aff'd*, 98 N.Y.2d 314 [2002]).

The general rule in New York is that, for the State to have criminal jurisdiction, either the alleged conduct or some consequence of it must have occurred within the State (*People v. McLaughlin*, 80 N.Y.2d 466, 471 (1992). This is because the State only has power to enact and enforce criminal laws within its territorial borders and there can be no criminal offense unless it has territorial jurisdiction (*id.*). The Plaintiff attempts to construct territorial jurisdiction of New York over Gérald Marie's alleged criminal conduct by reliance on *People v. Carvajal*, 6 N.Y.3d 305 (2005). *See*, Pltf's. Mem. of Law, Point II.B at p. 11.  In *Carvajal*, the court held that New York rightly exercised territorial jurisdiction pursuant to CPL 20.20(1)(c) over drug possession offenses, when the defendant resided, and the cocaine was seized, in California (6 N.Y.3d at 307). The case appears to be confined to its facts and the concept of "constructive possession" of controlled substances rather than support for what the Plaintiff argues is New York's ability to prosecute in New York the criminal conduct of Marie. *See*, *Carvajal*, 6 N.Y.3d at 317 ("In this coast-to-coast drug trafficking operation, defendant conspired in New York with his New York cohorts to bring cocaine to New York, thus affording a basis for the assertion of jurisdiction under our statutory scheme to prosecute him, jointly with his coconspirators, here.").  The dissent rightly questions the logic of the majority's opinion (*id.* at 317-330).

None of the cited decisions in Plaintiff's opposition support the proposition that the CVA should be applied in situations where the sexual offense occurred outside of New York.  As such, the CVA does not apply to Plaintiff's otherwise time barred claims.

**B.**     **New York's Borrowing Statute Applies And Otherwise Bars Plaintiff's Claims**

As Ms. Tapscott established in her motion papers, even if the CVA did apply to the Plaintiff's otherwise time barred claims, New York's Borrowing Statute, CPLR § 202, would apply to this action and time bar the claims.  *See*, Deft's. Mem. of Law, Point II.C at pp. 12-14.  The Plaintiff argues that the Borrowing Statute does not apply because her claims accrued in New York and, in any event, she was a resident of New York at the time she was raped and sexually assaulted in Paris, France.  *See*, Pltf's. Mem. of Law, Point II.C at pp. 11-14.

The Plaintiff does not seriously dispute that her personal injury claims accrued in France, where the injury took place (*see*, FAC, ¶¶ 3, 4 & 10; *see also, Global Fin. Corp. v Triarc Corp.*, 93 N.Y.2d 525, 529 (1999); *Martin v. Julius Dierck Equipment Co.*, 43 N.Y.2d 583, 591 (1978)).  The Plaintiff weakly argues that her claims against Ms. Tapscott accrued in New York where Plaintiff was subjected to "a risk of harm", citing an accountant's malpractice case discussing the rule of accrual in professional malpractice cases.  *See*, Pltf's. Mem. of Law, Point II.C. at pp. 11-12 (citing *Ackerman v. Price Waterhouse*, 644 N.E.2d 1009, 1013 (N.Y. 1994)).  This is not the rule of accrual that applies to Plaintiff's claims (*see*, *Global Fin. Corp.*, *supra* at 529).

The Plaintiff makes her stand for the Borrowing Statute's inapplicability on the issue of residency and claims that she has sufficiently pleaded facts to make her residency in New York at the time of the sexual assaults at least an issue to be decided at a later stage of the

case.  *See*, Pltf's. Mem. of Law, Point II.C at pp. 12-14.  To the contrary, the Plaintiff's allegations clearly establish that Plaintiff was *not* a New York resident at the relevant time of the sexual assaults.

The determination of whether a plaintiff is a resident of New York under CPLR § 202 turns on whether the plaintiff has "a significant connection with some locality in the State as a result of living there for some length of time during the course of a year." *See Antone v. Gen. Motors Corp., Buick Motor Div.*, 64 N.Y.2d 20, 30 (1984) (plaintiff with just a post office box in New York but living in a Pennsylvania nursing home where he was employed not a resident of New York); *cf. Eaton v. Keyer*, 53 A.D.3d 1029, 1030-1031 (3d Dept 2008) (plaintiff "born and raised in New York" where he held a series of jobs, including one for five years, continued to receive mail at an address in New York and his personal belongings remained in New York held to be a resident of New York for CPLR § 202 purposes despite convalescing in Tennessee for two years with his father following an motor vehicle accident).

At the time of the events set forth in the First Amended Complaint, Plaintiff was born and raised in California and "lived on her own in California's Bay Area" (FAC, ¶ 7), was signed by a modeling agency in San Francisco with ties to Elite (*id*., ¶ 48), was flown by Elite to their New York office (*id*., ¶ 7), arrived in New York in January 1986 (*id,*, ¶ 8), lived with other models in a model apartment provided by Elite (*id*.,¶¶ 8 & 48), earned no money while in New York (*id*., ¶ 9) and was sent to Paris "[i]n the spring of 1986" (*id*., ¶ 10).  In the original Complaint [ECF No. 1], Plaintiff described her time in New York as follows: "Plaintiff was in New York for less than a few months before she was told that she was being assigned to a new location." *Id*., ¶ 10, *cf*. FAC, ¶ 9.  To consider a place as a party's residence, the party "must stay there for some time and have

a bona fide intent to retain the place as a residence for some length of time and with some degree of permanency. Residence requires more stability then a brief sojourn for business, social or recreational activities." *Allen v. Handszer*, 148 Misc.2d 334, 560 N.Y.S.2d 593, 597 (N.Y.Sup.Ct.1990) (internal quotation and citation omitted).   In *Allen*, the court held that plaintiff, who did not vote in New York, did not have her mail sent to New York, but worked, shopped and ate in New York, "spent virtually all of her time" in New York, and slept 60 to 70 percent of her time at her boyfriend's apartment in New York was *not* a New York resident for purposes of CPLR § 202.  *Id*. at 340-341; *see also, Martinez v. Semicevic*, 178 A.D.2d 228, 229 (1st Dept 1991); *Neu v. St. John's Episcopal Hosp.*, 27 A.D.3d 538, 539 (2d Dept 2006).

Under New York law, the allegations of the First Amended Complaint make it clear that New York was not the Plaintiff's residence in 1986, when her claims accrued. The Plaintiff did not own, lease or contribute in any way to the model apartment she shared with other models in her brief stint in New York. According to Plaintiff, she earned no money while in New York (FAC, ¶48). The time spent in New York between her years of residency in California and the months spent in Paris were fleeting and insignificant by comparison.

In *Afanassieva v. Page Transportation, Inc.*, 2021 WL 4458686 (N.D.N.Y. Sept. 29, 2021), the court granted defendant's motion to dismiss under FRCP Rule 12 (b) (6) on the ground that plaintiffs' action was time barred. In applying New York's Borrowing Statute to the action, the court held that plaintiff was not a New York resident despite the plaintiff having worked in New York and paid State and City of New York taxes at a time prior to the accrual of the cause of action. *Id*. at *6-7. The court commented: "[plaintiff] has not demonstrated a 'significant connection' with the Brooklyn apartment she mentions in her declaration. She does not claim that

she owned, leased or contributed in any way to, that apartment, but rather states that she worked in it as a home health aide and that she pays New York income taxes. … This is insufficient to demonstrate New York residency." *Id*. at *7. The Plaintiff has demonstrated even less of a connection to New York than the plaintiff in *Afanassieva*.

The Plaintiff complains about Defendant's reference to the original complaint and comparison of the allegations relating to the issue of residency in that original complaint with the changes made to those allegations in the First Amended Complaint. *See*, Pltf's. Mem. of Law, Point II.C at p. 12, n. 1. The comparison was to show that Plaintiff's amendment to her original complaint was an attempt to set out a different version of the facts when it came to the issue of Plaintiff's residency at the time of the accrual of the action. *See*, Deft's. Mem. of Law, Factual Background, at p. 4; Point II.A at p. 10; Point II.C. at p. 13. The allegations in the original complaint are considered extrajudicial admissions, admissible to establish facts contained therein despite the amendment (*Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter, Inc.*, 32 F.2d 195, 198 (2d Cir. 1929), *cert. denied*, 280 U.S. 579, 50 S.Ct. 32, 74 L.Ed. 629 (1929).  This is because "[a] party thus cannot advance one version of the facts in its pleadings, conclude that its interests would be better served by a different version, and amend its pleadings to incorporate that version." *United States v. McKeon*, 738 F.2d 26, 31 (2d Cir. 1984); *Colliton v. Cravath, Swaine & Moore LLP*, 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008) (accepting facts alleged in an original complaint as true for a motion to dismiss where the plaintiff made a "transparent attempt ... to amend his pleading[s] in order to avoid a dispositive defense" raised by the defendant and the plaintiff's amended complaint directly contradicted his original complaint), *aff'd,* 356 Fed.Appx. 535 (2d Cir.2009). In order to deny that the changes in the First Amended Complaint to the timeline

of events alleged in the original complaint were intentional to avoid Defendant's dispositive defense that action is time barred, the Plaintiff states in her brief the following:

> While the [FAC] does not set forth an exact timeline, Plaintiff should not be faulted for this, as she had no obligation to plead facts in anticipation of affirmative defenses that might be raised by Tapscott, especially where Tapscott failed to raise this issue in her pre-motion letter.

Pltf's. Mem. of Law, Point II.C at p. 13. The Plaintiff was well aware that Defendant was going to claim that Plaintiff's claims were time barred because the CVA did not apply to non-residents and that, in any event, New York's Borrowing Statute, which applies to non-residents, bars this action. *See*, D'Avanzo Ltr of 10/08/2021 [ECF No. 16], pp. 1-2 ("'[T]he CVA's legislative history confirms that the bill, as drafted and subsequently enacted, was *intended to benefit New York residents* alleged to have suffered wrongs committed within the state.' *S.H. v. Diocese of Brooklyn, supra*. At *4.") (emphasis added); *see also,* D'Avanzo Ltr of 11/19/2021 [ECF No. 20] at p. 1 (commenting on the strength of Tapscott's impending motion to dismiss and citing to the following: "*See, Holloway v. Holy See*, 2021 WL 1791456 at *2, n. 2 (S.D.N.Y. May 5, 2021) (citing *S.H. v. Diocese of Brooklyn*, 2020 WL 4730433 at *3 & *4 (N.Y. Sup. Ct., Aug. 14, 2020) (examining the legislative history and holding the CVA does not apply to sexual assaults occurring outside New York, *particularly to non-New York residents, and, even if the CVA did apply, the claim was time-barred under New York's "borrowing statute" (CPLR § 202))*.") (emphasis added). The court should not reward Plaintiff for her transparent attempt to contradict prior factual allegations in order to avoid Ms. Tapscott's dispositive defenses to this action.

Based on the foregoing, New York's Borrowing Statute (CPLR § 202) does apply to this action and bars it as untimely whether New York's CVA applies or not.

## POINT II
## <u>THE CLAIMS AS PLED ARE NOT PLAUSIBLE ON THEIR FACE</u>

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Honickman v. BLOM Bank SAL, 6 F.4th 487* (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liablefor the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

As Ms. Tapscott pointed out in her motion, the Plaintiff has failed to plead a claim upon which relief can be granted. The allegations are conclusory and, at times, contradictory.  *See*, Deft's. Mem. of Law, Points III-V, pp. 14-25. The Plaintiff, in her opposition brief, claims that she has sufficiently pleaded her claims. *See*, Pltf's. Mem. of Law, Point III, pp. 14-22. The Plaintiff's reasoning, however, hangs on the court's acceptance of legal conclusions unsupported by facts and inferences the Plaintiff asks the court to draw, which are not reasonable.

With respect to the negligence claim, the Plaintiff alleges in both conclusory and contradictory fashion that Ms. Tapscott owed a duty of care "as the employer, caretaker, housemother and housing provider for underage models such as Plaintiff" (FAC, ¶ 76). The allegations in the Complaint do not support a conclusion that Ms. Tapscott was Plaintiff's "employer", "caretaker" "housemother" or "housing provider".  To the contrary, Plaintiff alleges that Casablancas paid for her to move to New York in Elite's model apartment in Manhattan (FAC,

¶ 48). Ms. Tapscott was allegedly head of the New Faces division and "in charge of overseeing all new models in New York" (*id.*, ¶ 50) and "overseeing" the model apartments (*id.*, ¶ 51). Based on these allegations, Elite, not Ms. Tapscott provided housing for Plaintiff while she was in New York.   Significantly, there are no allegations supporting a conclusion that Ms. Tapscott was Plaintiff's "caretaker" or "employer". As such, the bases for Plaintiff's claim that Ms. Tapscott owed a common law duty of care (or a fiduciary duty to disclose) to Plaintiff are without factual foundation. Yet, the Plaintiff argues that by simply characterizing Ms. Tapscott as Plaintiff's "caretaker", without more, is sufficient for the court to infer that Ms. Tapscott undertook the duty to care for and supervise the Plaintiff and, thus, required to use reasonable care to protect her. *See*, Pltf's. Mem. of Law, Point III.A at p. 15. Again, Elite, not Ms. Tapscott, took on that responsibility, if at all. The Plaintiff asks the court to infer that Ms. Tapscott personally opened a home for young women and, as part of providing them shelter, agreed to watch over them and care for them. But the factual allegations in the First Amended Complaint do not support that inference, nor is it reasonable to draw the same from Plaintiff's business relationship with Elite.

With respect to the fraud and infliction of emotional distress claims, the Plaintiff alleges facts that show that Ms. Tapscott was a "whistleblower" and complained about Marie's conduct after the fact. Yet the Plaintiff asks the court to infer from these facts that Ms. Tapscott "had both the motive and opportunity to commit fraud" and that these facts serve as "strong circumstantial evidence of conscious misbehavior and recklessness." *See*, Pltf's. Mem. of Law at p. 18.

The "facts" from which Plaintiff asks the court to draw these inferences are alleged events that post-date Plaintiff's trip to Paris and alleged rape (and actually contradict the allegations that Ms. Tapscott concealed knowledge of Marie's character). Ms. Tapscott allegedly prepared a

memo in June of 1986 to Casablancas complaining about models, including the Plaintiff, being sexually abused by Marie (FAC, ¶ 41) and allegedly told Casablancas and Marie a few years later to leave the 13 and 14-year-old models alone (*id.*, ¶ 63). Unless the court subscribes to the notion that "no good deed goes unpunished", the *reasonable* inferences from these alleged events are that Ms. Tapscott was unaware of Marie's conduct until after the Plaintiff was sexually abused and was not in agreement with the way he was conducting himself. Without the unreasonable inferences advocated by the Plaintiff, the fraud and the intentional infliction of emotional distress claims, requiring knowledge of prior misconduct and malicious intent, fall apart.

Another example of the contradictory nature of the Plaintiff's allegations are with respect to Plaintiff's "transfer" to Elite's Paris office. Ms. Tapscott allegedly "told Plaintiff that Defendant Marie chose her to live in his apartment" and Plaintiff understood this to be "a very good sign for her career" (*id.*, ¶ 69). The Plaintiff alleges, again, in conclusory fashion, that Ms. Tapscott was responsible for "arranging and directing" Plaintiff to fly from New York to Paris "for the purpose of child sexual assault was extreme and outrageous conduct" (FAC, ¶ 81). But, it was Casablancas and Marie who "arranged and directed" Plaintiff to fly from New York to Paris. According to Plaintiff's own allegations, Casablancas and Marie "were in charge of Elite Model Management from 1985 to 2010, each as the head of the modeling world's two epicenters, New York and Paris (*id.*, ¶ 15). Plaintiff "was chosen by the head of Elite in Europe [Marie] to live in his apartment with him" (*id.*, ¶ 53; *see also*, ¶ 10). Casablancas "was typically responsible for approving any model leaving New York" (*id.*, ¶ 54). "Elite sent Plaintiff to Paris on a short-term visa" (*id.*, ¶ 55). "Defendant Marie induced Plaintiff to move from New York to Paris France under the guise that he would do so to help her modeling career" (*id.*, ¶ 68). "Marie reached an agreement with John

Casablancas to send 17-year-old Plaintiff to live with Defendant Marie" (*id.*, ¶ 86), and "[i]n furtherance of this agreement, John Casablancas in fact sent Plaintiff to Marie's apartment in France" (*id.*, ¶ 87). As a result of this alleged agreement between Marie and Casablancas, Plaintiff was subjected to sexual intercourse without consent (*id.*, ¶ 89).

Based on the foregoing, there is no factual underpinning for the conclusory statement that it was Ms. Tapscott's "arranging and directing" of Plaintiff to fly from New York to Paris that caused Plaintiff to be sexually assaulted by Marie. Nor is there any factual support for the conclusory statement that Ms. Tapscott's "participation" in Plaintiff's transfer from New York to Paris was "for the purpose of child sexual assault". At most, Ms. Tapscott informed Plaintiff of a decision made by Casablancas and Marie that she would be going to Elite Paris (FAC, ¶ 53). The Plaintiff's own allegations thus contradict the bases for the fraud and infliction of emotion distress claims made against Ms. Tapscott.

While the Complaint contains conclusory allegations that it was Ms. Tapscott's intent "to misrepresent and fail to disclose the material fact that Defendant Marie was a child predator" so as to "induce Plaintiff to move in with Defendant Marie" (*id.*, ¶ 71), Plaintiff makes it perfectly clear that it was Casablancas and Marie who decided that Plaintiff should be sent to Paris (FAC, ¶¶ 54, 68, 86-88) and that it was Marie who "induced" Plaintiff into believing that this would be good for her career (*id.*, ¶ 68). The Plaintiff's conclusions as to Ms. Tapscott are, again, supported by unreasonable inferences.

In short, the allegations against Ms. Tapscott do not rise to any reasonable inference of her intent to mislead or defraud the Plaintiff, much less the "strong inference" of intent required of the Plaintiff's pleading. *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 191 (2d Cir. 2001); *Eternity Glob.*

*Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004).  Plaintiff's allegations actually contradict such an inference (FAC, ¶ 41).

The Plaintiff's fraud, negligence and infliction of emotional distress claims are not plausible given the allegations and the reasonable inferences to be drawn from them. As such, the Plaintiff has failed to plead a claim against Ms. Tapscott upon which relief can be granted and the First Amended Complaint should be dismissed.

<u>**CONCLUSION**</u>

Based upon the foregoing, the pleadings and the papers submitted on this motion, the Defendant, Trudi Tapscott, respectfully prays for an order pursuant to FRCP Rule 12 (b) (6) dismissing the Plaintiff's Complaint for failure to state a claim upon which relief can be granted, together with such other and further relief as this Court may deem just, proper and equitable.

Dated: February 18, 2022

Respectfully submitted,

PASHMAN STEIN WALDER HAYDEN, P.C.

By: *Joseph A. D'Avanzo*
    Joseph A. D'Avanzo, Esq.
    *Attorneys for Defendant Trudi Tapscott*
    2900 Westchester Avenue, Suite 204
    Purchase, New York 10577
    Tel. No.: (914) 612-4091
    jdavanzo@pashmanstein.com