UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  8/30/2022
```

CARRÉ SUTTON,

           Plaintiff,

-against-

GÉRALD MARIE, AKA GÉRALD MARIE CASTELLAC, an individual, and TRUDI TAPSCOTT, an individual,

           Defendants.

1:21-cv-06787 (MKV)

**OPINION AND ORDER GRANTING MOTION TO DISMISS AND DISMISSING FIRST AMENDED COMPLAINT**

**MARY KAY VYSKOCIL, United States District Judge:**

      Plaintiff Carré Sutton brings this action against Defendants Gérald Marie and Trudi Tapscott for fraud, negligence, and intentional infliction of emotional distress, alleging that in the mid-1980s, Tapscott sent her to Paris for modeling work and that, while in Paris, she was raped by Marie.  She also brings a claim solely against Defendant Marie for conspiracy to commit sexual misconduct.  Plaintiff invokes the New York Child Victims Act (the "CVA") to bring these claims which arise out of events that occurred more than three decades ago.  Defendant Trudi Tapscott moves to dismiss the Amended Complaint as against her.  [ECF No. 25]. Plaintiff has not yet served Defendant Marie, who resides in Spain, and he has not yet filed an appearance in this matter.  [ECF No. 19].[1]  Having carefully considered the parties' arguments, the Court grants Defendant Tapscott's motion.  Moreover, because Plaintiff's claims against Defendant Marie suffer from the same incurable defects as those against Tapscott, the Court *sua sponte* dismisses the First Amended Complaint in its entirety.

---

[1] Plaintiff is attempting to serve Defendant Marie under the Hague Convention as provided in Fed. R. Civ. P. 4(f)(1). [ECF No. 19].

1

**BACKGROUND**

I. **Factual Background**

In or around January 1986, when Plaintiff was 16 years old, she was recruited by Elite Model Management ("Elite") to move to New York City to become a model. (First Amended Complaint ("FAC") [ECF No. 24] ¶¶ 7-8, 47–48).[2] In January 1986, Elite arranged for Plaintiff, then 17 years old, to fly to New York and to reside in one of its apartments where the agency housed its models. (FAC ¶¶ 7–8, 48).

Plaintiff alleges that Tapscott was a high-level executive at Elite who worked closely with Elite founder John Casablancas. (FAC ¶ 14). Tapscott's duties included taking care of the young models, which involved overseeing the models' housing arrangements, arranging their transportation, and providing them with any other basic necessities. (FAC ¶ 14). Plaintiff alleges that Tapscott was "in effect a housemother for the child models, and in particular for Plaintiff." (FAC ¶ 14).

Plaintiff alleges that, after she arrived in New York, she was dependent on Elite because she was new to the city and lacked money or resources other than those provided by Elite. (FAC ¶¶ 8–9, 28). After she arrived in New York, Elite initially housed Plaintiff with five other young models in a Manhattan apartment. (FAC ¶¶ 8–9). A few months later, Plaintiff was moved into Tapscott's apartment, where Tapscott provided her food. (FAC ¶¶ 8–9, 14, 48, 51).

After she had been in New York a few months, Casablancas called Plaintiff into his New York office to tell her that "her look was not making the cut" and that she would have to move on unless she got some good photographs within the next week. (FAC ¶ 52). After Casablancas

---

[2] Unless otherwise noted, the facts are taken from the FAC, and are accepted as true for the purposes of this motion. *See, e.g., Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). However, this Court need not accept as true legal conclusions contained in a complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

left the office, Tapscott came in and comforted Plaintiff, "telling her that it was okay if she did not make it because she would be sent from New York to another one of Elite Europe's agencies like Milan or Paris." (FAC ¶ 52). Later that week, Tapscott informed Plaintiff that Elite was transferring her from New York to Paris and she was chosen by the head of Elite in Europe, Defendant Marie, to live in his apartment with him. (FAC ¶ 53). Tapscott indicated that this new assignment was for the purpose of helping Plaintiff further her career. (FAC ¶ 56). Plaintiff alleges that she trusted Tapscott and had seen other models go to work in Paris as well. (FAC ¶¶ 53, 56, 72).

Plaintiff was sent by Elite to Paris on a short-term visa. (FAC ¶ 55). Shortly after she arrived in Paris, Marie began forcibly sexually assaulting Plaintiff. (FAC ¶¶ 3–4, 10, 60–62, 73). This abuse continued over a "span of months," during which Plaintiff was repeatedly raped by Marie in his apartment and trafficked by Marie to other wealthy men throughout Europe without her consent. (FAC ¶¶ 4, 10, 60–62).

Plaintiff alleges, on information and belief, that Tapscott "knew or should have known, that Marie was sexually abusing underage models" at the time she informed Plaintiff that Elite was transferring her from New York to Paris. (FAC ¶ 39). In support of this allegation, Plaintiff alleges that, at the time that she was sent to Paris, "multiple Elite executives were aware that many models were being sexually abused by Gérald Marie." (FAC ¶ 40). Plaintiff also alleges that, shortly after Plaintiff was sent to Paris, Tapscott shared a memo with Casablancas describing Marie's abuse of multiple models, including Plaintiff. (FAC ¶ 41). According to Plaintiff's allegations, a few years after Plaintiff transferred to Paris, Tapscott told Casablancas and Marie to "leave the 13- and 14- year-old girls alone." (FAC ¶ 63). Tapscott was also quoted

3

in an interview in 2020 stating, "I have tremendous regret about not doing more at the time." (FAC ¶ 66).

## II. Procedural History

Plaintiff filed her Complaint in this action on August 12, 2021. [ECF No. 1]. The Court granted Tapscott leave to file a motion to dismiss, but directed that Plaintiff first file a letter, informing the Court whether she intended to amend her complaint based on Tapscott's arguments raised in the pre-motion letter. [ECF No. 21]. The Court warned Plaintiff that it would be her "last opportunity to amend the complaint in response to arguments raised in the parties' letters." [ECF No. 21]. Plaintiff timely advised the Court that she would amend her complaint to address issues raised in the parties' previous letters to this Court, [ECF No. 22], and thereafter, Plaintiff filed her First Amended Complaint [ECF No. 24]. Tapscott now moves to dismiss the First Amended Complaint. [ECF No. 25].[3]

## **LEGAL STANDARDS**

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

---

[3] In support of her motion, Tapscott submits a memorandum of law (Def. Br. [ECF No. 25-4]), and the declaration of Joseph A. D'Avanzo, with several exhibits attached, (D'Avanzo Decl. [ECF No. 25-1]). Plaintiff filed a memorandum of law in opposition to Tapscott's motion (Pl. Opp'n [ECF No. 28]), and Defendant replied (Def. Reply [ECF No. 29]).

4

will not do." *Twombly*, 550 U.S. at 555 (alterations, internal quotation marks, and citations omitted).

When determining the sufficiency of a plaintiff's claim for Rule 12(b)(6) purposes, the Court must limit its consideration to the factual allegations in the complaint, "which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff['s] possession or of which plaintiff[] had knowledge and relied on in bringing suit." *Roth v. CitiMortgage Inc.*, 756 F.3d 178, 180 (2d Cir. 2014) (quoting *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)).

## **DISCUSSION**

### I. **Plaintiff's Claims Are Time Barred**

#### A. **The CVA Does Not Apply To Plaintiff's Claims**

Plaintiff predicates her claims on the CVA, which revived cases involving sexual abuse of minors, regardless of the current age of the victim, where the statute of limitations had run. *See* N.Y. C.P.L.R. § 214-g. The CVA did not create a cause of action, but rather opened a window for bringing expired civil actions involving sexual abuse of minors. N.Y. C.P.L.R. § 214-g. It provides, in relevant part, that

> Notwithstanding any provision of law which imposes a period of limitation to the contrary . . . every civil claim or cause of action brought against any party alleging intentional or negligent acts or omissions by a person for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense as defined in article one hundred thirty of the penal law committed against a child less than eighteen years of age, incest as defined in section 255.27, 255.26 or 255.25 of the penal law committed against a child less than eighteen years of age, or the use of a child in a sexual performance as defined in section 263.05 of the penal law . . . which is barred as of the effective date of this section . . . is hereby revived . . . .

5

As a preliminary matter, the CVA does not apply to Plaintiff's claims premised on abuse that occurred in Paris, France in 1986. Unless expressly indicated otherwise, a New York statute does not apply outside the state. *See Global Reinsurance Corp. U.S. Branch v. Equitas Ltd.*, 18 N.Y.3d 722, 969 N.E.2d 187, 946 N.Y.S.2d 71 (N.Y. 2012);[4] *Goshen v. Mut. Life Ins. Co.*, 286 A.D.2d 229, 230, 730 N.Y.S.2d 46 (1st Dept. 2001) ("No legislation is presumed to be intended to operate outside the territorial jurisdiction of the state enacting it") *aff'd*, 98 N.Y.2d 314, 774 N.E.2d 1190, 746 N.Y.S.2d 858 (N.Y. 2002). That is especially the case where criminal laws are implicated, because a "state only has power to enact and enforce criminal laws within its territorial borders." *People v. McLaughlin*, 80 N.Y.2d 466, 471, 606 N.E.2d 1357, 591 N.Y.S.2d 966 (N.Y. 1992).

The CVA revives claims "which would constitute a sexual offense" as defined in the "penal law" under either Section 255.27, 255.26 or 255.25 or 263.05. N.Y. C.P.L.R. § 214-g. New York Penal Law § 10.00(1) defines "offense" as "conduct for which a sentence to a term of imprisonment or to a fine is provided by any law of this state." New York Criminal Procedure Law Section 20.10(1), defines "this state" as "New York State as its boundaries are prescribed in the state law, and the space over it." Based on the foregoing, the plain language of the CVA makes clear that it does not apply to conduct that occurred entirely outside of New York. *See Holloway v. Holy See*, 537 F. Supp. 3d 502, 505 n.2 (S.D.N.Y. May 5, 2021) ("The CVA is clear that it relies on New York criminal law, which does not apply to conduct in Mississippi"); *id.* ("Claims arising pursuant to the CVA must be tied to an alleged violation of New York criminal

---

[4] This matter is before the Court by virtue of diversity jurisdiction. (FAC ¶ 5). The Court, sitting in diversity, applies the laws of New York to this dispute. *See Clarex Ltd. v. Natixis Sec. Am. LLC*, 2013 WL 2631043, at *2 (S.D.N.Y. June 11, 2013) ("Where the parties' briefs assume that New York law controls . . . such implied consent . . . is sufficient to establish choice of law.") (internal quotation marks omitted). Both parties' briefing assumes that New York law applies to this action. (Def. Br. 9; Pl. Opp'n 5).

6

law, and thus the CVA cannot revive claims where the alleged abuse occurred outside of New York"); *S.H. v. Diocese of Brooklyn*, No. 517999/2019, 2020 N.Y. Misc. LEXIS 4394, 2020 WL 4730433, at *3 (N.Y. Sup. Ct. Aug. 14, 2020) (CVA does not apply to extra-territorial conduct based on plain text and legislative history); *see also Carreras v. Fontanez*, No. 1:20-CV-5765 (MKV), 2022 WL 956029, at *3 (S.D.N.Y. Mar. 30, 2022).

     Plaintiff argues that the CVA revives her claim because all of Tapscott's wrongful conduct took place in New York and Plaintiff was a New York resident at the time she was harmed. (Pl. Opp'n 9). However, as noted, the CVA only revived those claims premised on a sexual offense "which would constitute a sexual offense" as defined in the "penal law" under either Section 255.27, 255.26 or 255.25 or 263.05. N.Y. C.P.L.R. § 214-g. As discussed above, the CVA did not revive causes of action premised on extra-territorial conduct. *See Holloway*, 537 F. Supp. 3d at 505 n.2. Plaintiff's First Amended Complaint affirmatively pleads that the *criminal* conduct here occurred in Paris, France in 1986. (FAC ¶¶ 7-8, 47–48, 52–53, 56, 60–62). Indeed, the cases that Plaintiff cites in support of her arguments all involved allegations of sexual offenses that occurred in New York. *See Giuffre v. Andrew*, No. 21-CV-6702 (LAK), 2022 WL 118645, at *3 (S.D.N.Y. Jan. 12, 2022) (alleged abuse occurred in Manhattan); *Oawlawolwaol v. Boy Scouts of Am.*, No. 21CV4714PKCJMW, 2021 WL 4355880, at *1 (E.D.N.Y. Sept. 24, 2021) (alleged abuse occurred in Suffolk County and upstate New York); *Doe v. Baram*, No. 20 CIV. 9522 (ER), 2021 WL 4847076, at *1 (S.D.N.Y. Oct. 15, 2021) (alleged abuse occurred in New York).

     Plaintiff contends Marie could possibly be "prosecutable under New York Penal Law § 130, given that Marie's conspiracy with Casablancas would most likely have allowed New York to exercise its territorial jurisdiction in a criminal prosecution." (Pl. Opp'n 10–11). The

7

general rule in New York is that, for the State to have criminal jurisdiction, "either the alleged conduct or some consequence of it must have occurred within the State." *People v. Kassebaum*, 95 N.Y.2d 611, 617, 744 N.E.2d 694, 697 (N.Y. 2001) (quoting *McLaughlin*, 80 N.Y.2d at 471). Plaintiff's reliance on *People v. Carvajal*, 6 N.Y.3d 305, 845 N.E.2d 1225 (N.Y. 2005) in support of this argument is flawed. In *Carvajal*, the Court held that New York rightly exercised territorial jurisdiction pursuant to CPL 20.20(1)(c) over drug possession offenses, when the defendant resided, and the cocaine was seized, in California. *Id.* at 307. However, *Carvajal* concerned a nationwide drug trafficking operation where the defendant had conspired in New York with New York co-conspirators to transport cocaine to New York. *Id.* at 315, 317. Here, Plaintiff does not make any allegations connecting Marie or his conduct to New York. Accordingly, Plaintiff's claims are not revived by the CVA.

### B. Plaintiff's Claims Are Untimely

Plaintiff alleges that she was sexually assaulted by Marie in Paris, France in 1986. (FAC ¶¶ 7-8, 47–48, 52–53, 56, 60–62). Defendant Tapscott moves to dismiss the Complaint on the ground that Plaintiff's claims are all untimely. "[A] statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014); *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989) ("Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss."); *New York v. W. Side Corp.*, 790 F.Supp.2d 13, 28 (E.D.N.Y. 2011) ("[I]t is well-established that a statute of limitations defense may only be resolved on a pre-

answer motion to dismiss where the complaint alleges specific information to permit such a finding.").

Plaintiff initiated this action for fraud, negligence, and intentional infliction of emotional distress on August 12, 2021. [ECF No. 1]. The statute of limitations for fraud in New York is six years from the date the cause of action accrued or two years from the time the plaintiff discovered the fraud or could have discovered it with reasonable diligence. N.Y. C.P.L.R. § 213(8). The statute of limitations for negligence claims in New York is three years from the date of injury. N.Y. C.P.L.R. § 214(5). The statute of limitations for intentional torts in New York is one year from the intentional act. N.Y. C.P.L.R. § 215(3). All three causes of action are therefore untimely under New York Law.

In opposition to Tapscott's motion, Plaintiff does not address the applicable New York statutes of limitations, nor does she challenge that, absent the CVA, her claims are untimely. Having failed to establish that the CVA applies to her claims, Plaintiff's claims — which are predicated on conduct that occurred thirty-five years ago — are barred by the applicable statute of limitations. Accordingly, Plaintiff's claims against Tapscott are dismissed as time barred.

## II. The Court *Sua Sponte* Dismisses The Claims Against Marie

Although Marie has not been served, and as a result has not answered or otherwise appeared in this matter, "it is well settled that a 'district court has the power to dismiss a complaint *sua sponte* for failure to state a claim' so long as the plaintiff is given an opportunity to be heard." *Mentuhotep v. New York City Police Dep't*, No. 16 Civ. 2871 (GBD), 2016 WL 3522279, at *1 n. 1 (S.D.N.Y. June 22, 2016) (quoting *Wachtler v. Cty. of Herkimer*, 35 F.3d 77, 82 (2d Cir. 1994)). Because Plaintiffs' claims against Marie suffer from the same deficiencies as those brought against Tapscott, namely that they are time-barred, the Court treats the pending

9

motion to dismiss as if it were brought on behalf of all defendants. *See Virtual Dates, Inc. v. Afternic.com, Inc.*, No. 01 Civ. 4023, 2001 WL 1646451, at *2 (S.D.N.Y. Dec. 20, 2001) (dismissing claims against defendant who did not join in other defendants' motion to dismiss because "precisely the same points control the claims against it"); *see also Le Bouteiller v. Bank of New York Mellon*, No. 14 Civ. 6013, 2015 WL 5334269, at *11 n.6 (S.D.N.Y. Sept. 11, 2015) (dismissing *sua sponte* the claims against non-moving defendant for failure to state a claim where "the rulings in this opinion would apply with equal force to [that defendant]").

In addition, Plaintiff does not allege how this Court has personal jurisdiction over Defendant Marie, an apparent resident of Spain. [*See* ECF No. 19]. Accordingly, the Court *sua sponte* dismisses Plaintiff's claims against Defendant Marie.

## CONCLUSION

For the foregoing reasons, Tapscott's Motion to Dismiss [ECF No. 25] is GRANTED. The Court also *sua sponte* dismisses Plaintiff's First Amended Complaint in its entirety.

The Clerk of Court is respectfully requested to terminate docket entry 25 and to close this case.

**SO ORDERED.**

**Date:  August 30, 2022**
      **New York, NY**

_____
**MARY KAY VYSKOCIL**
**United States District Judge**